LOUISE JOHNSON, Respondent, v. THE CITY OF NEW YORK et al., Appellants.

1. HIGHWAY — SPEED CONTEST BY AUTOMOBILES ON PUBLIC HIGHWAY — WHEN SPECTATOR INJURED THEREBY CANNOT RECOVER BECAUSE CONTEST, AND USE OF HIGHWAY, WAS ILLEGAL. While the use of a certain public highway within the city of New York as a racecourse for automobiles competing against time, and the holding of an automobile race thereon by certain specified persons, which was authorized by a special ordinance, was illegal not only because the ordinance was invalid as a regulation of the speed of automobiles but because it permitted the use of a public highway for a private purpose and it operated as a participation of the city in the commission of the unlawful act, yet, where a person came to such highway at the time of the race, not as a traveler or casual spectator, traveling in the vicinity, but for the express purpose of witnessing the race, knowing it was to be a contest and that the automobiles would be driven at the greatest possible speed, and, while witnessing the race, was injured by an automobile, deflected from the course, running at high speed, it is reversible error, upon the trial of an action brought by such injured person against the city and the persons conducting the race, to direct a verdict for the plaintiff upon the ground that the speed contest, and the use of the highway for that purpose, was illegal and a nuisance and submit to the jury only the question of damages.

2. SAME — LIABILITY OF DEFENDANTS DEPENDENT UPON QUESTION OF FACT WHETHER THEY WERE GUILTY OF NEGLIGENCE OR OF COMMITTING A NUISANCE IN THE MANNER OF CONDUCTING THE RACE. The fact that the race and the use of the highway for that purpose were illegal

does not render the city or the parties participating in the race liable to the plaintiff, regardless of any element of negligence or other misconduct. As between the plaintiff and these defendants the legality or illegality of the exhibition given and witnessed so far as that illegality depends on the obstruction and appropriation of the highway was not the material factor. It did not create a liability against the defendants if they were at fault in the conduct of the race in no other respect. It does not preclude a recovery by the plaintiff if the injury to her was caused by the misconduct or fault of the defendants. Whether the contest as conducted was in fact a nuisance, whether the defendants, or any of them, were guilty of negligence in the management of the race and the contributory negligence, if any, on the part of the plaintiff, were all questions of fact which the trial court should have submitted to the jury for determination.

*Johnson* v. *City of New York,* 109 App. Div. 821, reversed.

(Argued May 17, 1906; decided October 2, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 9, 1906, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court and an order denying a motion for a new trial.

The nature of the action and the facts so, far as material, are stated in the opinion.

*John J. Delany, Corporation Counsel (James D. Bell* of counsel), for City of New York, appellant. The action of the board of aldermen in adopting the resolution or ordinance under which a portion of the Southside boulevard was set aside for the automobile speed trials did not create a nuisance *per se,* and the court erred in declining to submit any question but that of damages to the jury. (*Flynn* v. *Taylor,* 127 N. Y. 596; *Bybee* v. *State,* 94 Ind. 443; *Landau* v. *City of New York,* 180 N. Y. 48; *Scanlon* v. *Wedger,* 156 Mass. 462; *Frost* v. *Josselyn,* 180 Mass. 389; *Crowley* v. *R. F. Co.,* 95 App. Div. 13; *Gillis* v. *Penn. R. R. Co.,* 59 Penn. St. 129; *McCarthy* v. *Vil. of Munising,* 99 N. W. Rep. 865; *Laidlaw* v. *Sage,* 158 N. Y. 99; *Meeker* v. *Smith,* 84 App. Div. 111; *Roedecker* v. *M. S. R. Co.,* 87 App. Div. 227; *Seifter* v. *B. H. R. R. Co.,* 169 N. Y. 254; *Hoffman* v. *King,* 160 N. Y. 618.)

*Charles F. Brown* and *W. W. Niles* for Automobile Club of America, appellant.   The judgment appealed from cannot be sustained upon the ruling of the trial judge that speeding of automobiles on the Southside boulevard on the day of the accident was an illegal act and constituted a public nuisance. Assuming that instruction to have been correct, it was essential to the plaintiff's right to recover that the illegal act which constituted the nuisance was the proximate cause of her injuries.   That question was one of fact which the court refused to submit to the jury.   (*Irvine* v. *Wood*, 51 N. Y. 224; *Laidlaw* v. *Sage*, 158 N. Y. 98; *Seifter* v. *B. H. R. R. Co.*, 169 N. Y. 254; *Roedecker* v. *M. S. R. Co.*, 87 App. Div. 227; *Schoepflin* v. *Coffey*, 162 N. Y. 12; *Hoffman* v. *King*, 160 N. Y. 618; *Thomas* v. *Winchester*, 6 N. Y. 397; *Coughtry* v. *G. W. Co.*, 56 N. Y. 124; *Devlin* v. *Smith*, 89 N. Y. 470; *Cohen.* v. *Mayor, etc.*, 113 N. Y. 537.)   The plaintiff having gone from her home to the boulevard for the sole purpose of "seeing the races," she must be deemed to have consented to the use and appropriation of the boulevard for the purpose of the contest.   So far as she was concerned, the running of automobiles at a speed in excess of eight miles an hour cannot, therefore, be held to have been a nuisance, and she cannot recover for her injuries upon any ground except that of negligence.   (*Scanlon* v. *Wedger*, 156 Mass. 462; *Crowley* v. *R. F. W. Co.*, 183 N. Y. 353; *Ochsenbein* v. *Shapley*, 85 N. Y. 215; Thomp. on Neg. § 791.)   The court erred in ruling that the use of the highway for the purpose of the contest, and speeding automobiles thereon as authorized by the city, was illegal and a nuisance *per se.*   (Penal Code, § 385; 3 Black. Comm. 215; 1 Russell on Crimes, 318; *Peckham* v. *Henderson*, 27 Barb. 210; *Landau* v. *City of New York*, 180 N. Y. 48.)

*John G. Milburn* for Albert R. Shattuck et al., appellants. The plaintiff, by reason of her voluntary attendance, is not in a position to raise the question that the speed trials were illegal or a nuisance, and has no cause of action excepting for

negligence. (*Scanlon* v. *Wedger*, 156 Mass. 462; *Frost* v. *Jocelyn*, 180 Mass. 389; *Crowley* v. *R. F. Co.*, 183 N. Y. 355; *Knisley* v. *Pratt*, 148 N. Y. 372.) Even if the trials were a violation of section 666 of the Penal Code, liability to plaintiff for the accident does not follow as a matter of course. (*Brown* v. *R. R. Co.*, 22 N. Y. 191; *Massoth* v. *D., L. & W. R. R. Co.*, 64 N. Y. 531; *Knuffle* v. *K. I. Co.*, 84 N. Y. 488; *Hanlon* v. *Ry. Co.*, 129 Mass. 310; *G. T. Ry. Co.* v. *Ives*, 144 U. S. 418; *Graham* v. *M. R. R. Co.*, 149 N. Y. 341; *Donnelly* v. *City of Rochester*, 166 N. Y. 319; *Marino* v. *Lehmaier*, 173 N. Y. 530.) It was error to hold that these speed trials were a nuisance as a matter of law. (Penal Code, § 385; *Heeg* v. *Licht*, 80 N. Y. 579; *Speir* v. *City of Brooklyn*, 139 N. Y. 6; *Landau* v. *City of New York*, 180 N. Y. 48; *Crowley* v. *R. F. Co.*, 183 N. Y. 353.)

*Stillman F. Kneeland* for respondent. The court was warranted in directing a verdict on the ground that the unlimited speeding of that particular machine on that particular route in the presence of a great crowd was a nuisance *per se*. (*Carleton* v. *Rugg*, 5 L. R. A. 193; *Ricker* v. *McDonald*, 89 App. Div. 300; *Callahan* v. *Gilmore*, 107 N. Y. 360; *Negus* v. *City of Brooklyn*, 10 Abb. [N. C.] 180; *Fanning* v. *Osborne*, 102 N. Y. 441; *Beekman* v. *T. A. R. R. Co.*, 153 N. Y. 144; *McComber* v. *Michaels*, 22 Am. Rep. 522; *Bennett* v. *Lovell*, 34 Am. Rep. 628; *N. C. C. R. Co.* v. *Town of Lakeview*, 44 Am. Rep. 788; *Stanley* v. *City of Davenport*, 54 Iowa, 463.) The court was waranted in directing a verdict on the ground that the admitted facts constituted in law a trespass. (*Castle* v. *Duryee*, 2 Keyes, 169; *Hay* v. *Cohoes Co.*, 2 N. Y. 159; *St. Peter* v. *Denison*, 58 N. Y. 416; *Sullivan* v. *Dunham*, 161 N. Y. 290.) The defendants were liable on the principle of negligence *per se* or statutory negligence. (1 Thomp. on Neg. § 9; *Tobey* v. *B., etc., R. Co.*, 94 Iowa, 256; *Siemers* v. *Eisen*, 54 Cal. 418; *Tucker* v. *Ill., etc., R. Co.*, 42 La. Ann. 114; *St. L., etc., R. Co.* v. *Huggins*, 20 Ill. App. 639;

*I.*, etc., *R. Co.* v. *Barnhart*, 115 Ind. 391; 13 West. Rep. 431; *Clements* v. *L. E. L. Co.*, 44 La. Ann. 692; *Osborne* v. *McMasters*, 40 Minn. 103; *D.*, etc., *R. Co.* v. *Robbins*, 2 Colo. App. 313; *C.*, etc., *R. Co.*, v. *Des Lauriers*, 40 Ill. App. 654.) The defendants having acted in violation of the statute are liable in tort for the consequences of their wrongful acts without regard to the question of nuisance or actual negligence. (*Haegi* v. *P. & N. Y. S. S. Co.*, 54 How. Pr. 145; *Jetter* v. *N. Y. & N. H. R. R. Co.*, 2 Keyes, 154; *Massoth* v. *D. & H. C. Co.*, 64 N. Y. 532; *Donnegan* v. *Erhardt*, 119 N. Y. 468; *Willy* v. *Mulledy*, 78 N. Y. 310; *Conklin* v. *Thompson*, 29 Barb. 218; *Creed* v. *Hartman*, 29 N. Y. 591; *Clifford* v. *Dam*, 81 N. Y. 52; *Congreve* v. *Smith*, 18 N. Y. 79.) As a question of law under the undisputed facts in the case the joint acts of the automobile club and of the city constituted the proximate cause of the injuries sustained by the plaintiff. (*Freeman* v. *M. M. A. Assn.*, 156 Mass. 351; Thomp. on Negligence, § 48; *Gibney* v. *State*, 137 N. Y. 1; *Sheridan* v. *B. C. & N. R. R. Co.*, 36 N. Y. 39.) The legal status of a spectator does not differ in principle from that of an ordinary traveler. (Thomp. on Neg. [2d ed.] § 792; *Fisk* v. *Waite*, 104 Mass. 71; *Cohen* v. *Peabody*, 155 Mass. 104; *Castle* v. *Duryée*, 2 Keyes, 169; *Bradly* v. *Andrews*, 51 Vt. 530; *McGuire* v. *Spence*, 91 N. Y. 303.)

CULLEN, Ch. J. This action was brought to recover damages for personal injuries suffered by the plaintiff by being struck by an automobile while witnessing a speed test or race of the machines in a public highway in the borough of Richmond, city of New York. The highway, which was in an outlying part of the city and known as the Southside boulevard, had been used as a resort for fast driving for a number of years. The race or speed contest was conducted by sending the automobiles, one at a time, over a measured distance on the highway. It was held under the assumed authority of the following resolution adopted by the

board of aldermen : " *Resolved*, That upon the recommenda-
tion of the Local Board, First District, Borough of Richmond,
permission be and the same hereby is given to the Automo-
bile Club of America to conduct speed trials for automobiles
on the Southside Boulevard, in the Fourth Ward of the Bor-
ough of Richmond, on Saturday, May 31st, 1902, between the
hours of 11 o'clock A. M. and 4 o'clock P. M., or in case the
day be stormy, on the first clear week day thereafter between
the same hours, and that during said hours on said day a speed
of greater than eight miles per hour may be attained, to which
end any and all ordinances regulating the speed of vehicles is
hereby suspended, such suspension to continue, however, only
for the day and place on which the privilege herein men-
tioned and conveyed is exercised ; and provided, further, that
the said Automobile Club of America furnish all proper police
protection over that part of the Southside Boulevard over
which the said trials are to be conducted." The plaintiff
was present as a spectator. She came from her residence
about five miles away in company with her husband and
others, as she said, " to see the races." She first witnessed
the race from the highway, but finding a better view could
be obtained, she passed from the highway into an adjacent
clump of woods and there remained. Many automobiles
went over the course without mishap. Finally, one machine,
moving at the rate of about a mile a minute, by some mis-
chance was deflected from the road into the woods and
struck and injured the plaintiff. At the conclusion of the
evidence the learned trial judge, over the objection and excep-
tion of the several defendants, directed a verdict against them
all on the ground that the speed contest was unlawful and a
nuisance, and submitted to the jury only the question of dam-
ages. That judgment has been affirmed by the Appellate
Division, and from the judgment of the Appellate Division
this appeal is taken.

It may be conceded that the action of the city in author-
izing the use of a public highway as a racecourse for automo-
biles competing against time was illegal, and that the act of

the other defendants in holding the race under that permission
was equally illegal.  Under the law, at the time of this acci-
dent, any person driving or operating an automobile or motor
vehicle upon any highway within any city or incorporated
village at a greater rate of speed than eight miles an hour,
"except where a greater rate of speed is permitted by the
ordinance of the city," was guilty of a misdemeanor.   (Laws
1902, ch. 266.)   The special ordinance under which the race
took place was passed by the common council on April 15th,
1902.   That this ordinance, which did not assume to author-
ize the operation of automobiles generally at a greater rate
than that prescribed in the statute, and permitted only certain
specified persons to use the highway as a racecourse on a par-
ticular occasion, was not only invalid as a regulation of the
speed of automobiles, but also operated as a participation
by the city in the commission of the unlawful act, is set-
tled by the recent decision of this court in *Landau* v. *City
of New York* (180 N. Y. 48).   In that case the plain-
tiff was injured by a discharge of fireworks in a city
street.   There had been a general ordinance passed by the
municipality which forbade the discharge of fireworks in the
streets.   A short time prior to the accident the common coun-
cil passed a resolution suspending the ordinance so far as it
might apply to the meetings or parades of political parties
during the election campaign of 1902, the suspension to con-
tinue till November 10th of that year.   It was conceded by
this court that the municipality would not have been liable
for failure to enact general ordinances restricting or forbid-
ding the discharge of fireworks, and it was contended that
the action of the common council was a mere repeal *pro tanto*
of the previous ordinances, a repeal for which the city could
not be held liable any more than for a failure to pass the
original ordinance.   This court took a different view, and
held that the resolution authorizing the discharge of fireworks
at political meetings and parades was not an exercise of the
power possessed by the local authorities to regulate the use
and discharge of fireworks, but merely an unlawful special

10

license or permission to individuals. The action of the
defendants was also illegal in other respects than those relat-
ing to the rate of speed. It assumed to grant to individuals
the right to appropriate the highway for a private purpose,
to wit, that of a racecourse, to the exclusion of the public.
Authority reposed in the common council by the charter
(sec. 50) " to regulate the use of streets and sidewalks by foot
passengers, animals and vehicles, to regulate the speed at which
vehicles are propelled in the streets," etc., gave no power to
divert the highway from public to private use. The authority
was to regulate public travel, not to exclude the public. Of
course, in the congested condition of many of the streets of
the city of New York restrictions, possibly of a somewhat
arbitrary character, are necessary to secure public passage
along the highway ; otherwise intolerable confusion would
exist and the streets become blocked so that travelers could
move in no direction. Such regulations are within the power
of the municipal authorities. So also it may be that the right
of the municipal authorities to allow, at certain seasons of the
year and on certain streets where it can be safely done, the
operation of vehicles at a greater speed than elsewhere per-
mitted and the use of the street for sleighing or coasting, can
be sustained. This it is unnecessary to determine. In those
cases every member of the public has an equal right to share
in the privileges granted in the street. There is no appropri-
tion of it for a private use. The present case is radically
different. The occupation of the highway was to be exclusive
in the parties to whom the permission was granted. There-
fore, the race or speed contest held by the defendants was an
unlawful use and obstruction of the highway and *per se* a
nuisance. (Penal Code, sec. 385, sub. 3.)

But granting that the action of the defendants in the use
of the highway was illegal, the question remains, was it illegal
against the plaintiff so as to render the parties participating
therein liable to her solely by reason of the illegality of their
acts and regardless of any element of negligence or other mis-
conduct. If the plaintiff had been a traveler on the highway

when she met with injury a very different question would be presented. Highways are constructed for public travel, and, as already said, the acts of the defendents were doubtless an illegal interference with the rights of the traveler. It may well be that for an injury to the traveler, or to the occupants of the lands adjacent to the highway, or even to a person who visited the scene of the race for the purpose of getting evidence against the defendants and prosecuting them for their unlawful acts, the defendants would have been absolutely liable regardless of the skill or care exercised. But the plaintiff was in no such situation. She was not even a casual spectator whose attention was drawn to the race while she was traveling in the vicinity. She went from her home, a distance of five miles from the scene of the race, expressly to witness it and to enjoy the pleasure that the contest offered. As to the elements which made the contest illegal she was aware of their existence. She knew it was to take place on a highway, and she knew it was to be a contest for speed, and that, therefore, the automobiles would be driven at the greatest speed of which they were capable. The learned Appellate Division has said: "It is possible that a different view might be taken had it appeared that the plaintiff knew or had any reason to know of the unlawful nature of the contest. There is, however, nothing in the case tending to indicate that she was aware that they were not being conducted under the operation and sanction of a general ordinance or by virtue of a legal and valid permit." It is entirely possible that as a matter of fact the plaintiff did not know that the race on the highway was illegal, but it was illegal not from any want of permit, but because there was no statutory power to grant a permit to use the highway for a private purpose. The plaintiff, like every other person, is chargeable with knowledge of law, however ignorant in fact she may have been of it. But it is equally probable that the defendants thought that the race was legal. No distinction can be drawn between the parties in this respect. We are at a loss, moreover, to see how the legality or illegality of the race affected a person in the

condition of the plaintiff. The danger she would encounter in witnessing the race would be exactly the same had there been a statute of the state which expressly authorized it. It does not lie in the mouth of the plaintiff to assert as a ground of liability the illegality of an act from which she sought to draw pleasure and enjoyment. It may be assumed that her mere presence at the race was not sufficient participation therein to render her liable to prosecution as one of the maintainors or abettors of the nuisance (Cooley on Torts, p. 127), though in the case of a prizefight, at common law, all spectators were equally guilty with the combatants of a breach of the peace. (*Rex* v. *Perkins,* 4 C. & P. 537; *R.* v. *Murphy,* 6 C. & P. 103; *R.* v. *Young,* 8 C. & P. 645.) The general maxim, *injuria non fit volenti* applies, and one cannot be heard to complain of an act in which he has participated, if not so far as to render him liable as a party to the offense or tort, at least to the extent of witnessing, encouraging it and seeking pleasure and enjoyment therefrom. Illustrations of this principle may readily be found. It is a misdemeanor to conduct a horse race within a mile of court when the court is in session; also to give a theatrical or operatic exhibition on Sunday. It seems to me absurd that persons obtaining admission and attending the prohibited race or opera and meeting injury there shall successfully assert the illegality of the exhibition as a ground for recovery. It might with just as much force be contended that the presence of the person injured at the illegal exhibition or spectacle precluded him from recovery against the parties by whose negligence or tort the injury had been occasioned. Such is the law in some jurisdictions, but not so in this state. In *Platz* v. *City of Cohoes* (89 N. Y. 219) the plaintiff while driving on Sunday for the purpose of pleasure was injured through a defect in one of the streets of the defendant. It was held that the fault of the plaintiff in driving on the Sabbath did not constitute a defense to the action and was not to be considered the proximate cause of the accident. We think the same principle applicable here. / The acts of the defendant though

illegal were illegal as against the public and travelers on the highway, not as against the plaintiff. Had the defendants broken into and entered without permission upon private property and conducted the race thereon, doubtless they would have been absolutely liable for all injuries occasioned thereby to the owners or occupants of the land. But what bearing would the trespass have on the defendants' liability to spectators? On the other hand, the plaintiff, to get a better view of the race, entered and stood upon adjacent land. This probably was a trespass on her part. But equally it has no bearing on her right to recover if the defendants were guilty of negligence or other fault. As between the plaintiff and these defendants the legality or illegality of the exhibition given and witnessed, so far as that illegality depends on the obstruction and appropriation of the highway, was not the material factor. It did not create a liability against the defendants if they were at fault in the conduct of the race in no other respect. It does not preclude a recovery by the plaintiff if the injury to her was caused by the misconduct or fault of the defendants.

The view which we entertain is in accord with the law in the state of Massachusetts. In *Scanlon* v. *Wedger* (156 Mass. 462) it was held that a spectator at an exhibition of fireworks, held in a street, could recover only for negligence, the court saying: " If an ordinary traveler upon the highway had been injured different reasons would be applicable; but a voluntary spectator who is present merely for the purpose of witnessing the display must be held to consent to it, and he suffers no wrong if accidentally injured without negligence on the part of any one, although the show was unauthorized. He takes the risk." From this decision there was a strong dissent, but an examination of the dissenting opinion shows that it was directed rather to the question of negligence than to that of illegality. The case was followed in *Frost* v. *Josselyn* (180 Mass. 189). In Pennsylvania the law has been extended in this direction farther probably than would command our assent. In *Norristown* v. *Moyer* (67 Pa. St. 355) the charge

of the trial judge that loitering in the public highway would *per se* preclude a recovery from the fall of a falling pole seems to have been approved. In this state, where a boiler was being tested on the public highway, it was held that for a traveler to remain in the vicinity after being informed of the danger raised a question of contributory negligence to be determined by the jury. The cases relied on by the learned counsel for the respondent we think are not controlling. The decision in *Bradley* v. *Andrews* (51 Vt. 530) is directed to contributory negligence and assumed risks, not to illegality. In *Castle* v. *Duryee* (1 Abb. Ct. of App. Dec. 327), where the plaintiff was injured by a ball discharged from a gun during the exercises of a militia regiment, the recovery at Circuit was on the ground of negligence, a recovery which was upheld by this court. Judge DENIO in his opinion thought the recovery might also be sustained on the ground of trespass. The report shows that a majority of the court concurred in the decision. Whether the opinion was also concurred in does not appear. However that may be, Judge DENIO states that the plaintiff in that case was unaware that there was to be any discharge of firearms. Here the plaintiff knew that there was to be a test of speed of automobiles, and it was the high speed of the automobile that caused the injury. In *Guille* v. *Swan* (19 Johns. 381) it was held that a defendant who descended in a balloon upon the plaintiff's garden, whereby a great crowd of people broke through the fences and injured his vegetables and flowers, was liable for the consequences of his act, although he might not have invited the crowd. That case would be in point if it had been held that the defendant was also liable to one of the crowd who had been injured while entering into the garden without invitation. In *McGuire* v. *Spence* (91 N. Y. 303) it was held that the fact that a child was playing in the street did not prevent her from recovering for injuries occasioned by falling into a dangerous and unguarded area which the defendant had left in the street. This is doubtless authority for the right of the child to play in the street, but

it is not authority for the proposition that the defendant would have been liable had the child gone to play with the area by jumping into it and clambering out of it. It must be distinctly borne in mind in this case that as already said the plaintiff was not a casual spectator, whose attention might naturally be drawn to any remarkable occurrence on the highway and thereby loiter for some short period without losing her rights as a traveler, but one who went to the place expressly to see the exhibition.

The learned counsel for the respondent has argued at length that the character of the road, the curve in it, the nature of its pavement and similar matters rendered it dangerous and improper to conduct a contest by automobiles, and that considering the number of persons naturally attracted to such a spectacle the contest was so dangerous as to constitute a public nuisance within the definition of the Penal Code. (Penal Code, § 385, sub. 4.) Whether the contest as conducted was in fact a nuisance, whether the defendants, or any of them, were guilty of negligence in the management of the race and the contributory negligence, if any, on the part of the plaintiff, were all questions of fact which the trial court should have submitted to the jury for determination. (*McDonald v. Met. St. Ry. Co.*, 167 N. Y. 66.)

For these reasons the judgment of the courts below must be reversed and a new trial had, costs to abide the event.

EDWARD T. BARTLETT, HAIGHT, HISCOCK and CHASE, JJ., concur; GRAY and O'BRIEN, JJ., absent.

Judgment reversed, etc.