ALBERT V. SCHMITT, an Infant, by JOHN SCHMITT, His Guardian ad Litem, Respondent, *v.* THE CITY OF SYRACUSE, Appellant.

**Negligence — explosives — passer-by, loitering upon street, injured by accidental explosion of dynamite being used by municipal authorities — when evidence sufficient to sustain verdict for plaintiff.**

Dynamite was being used in the Onondaga creek in the city of Syracuse, under the supervision of the authorities, to recover the body of a boy who had been drowned. A quantity of dynamite was placed in a motor car which was left standing near the junction of two streets while it was being prepared for use, when an explosion occurred,

11

severely injuring the plaintiff who had heard the explosions in the creek and ridden on his bicycle to the location of the car to see what was going on, and was standing six or eight feet from it when injured. No danger signals were displayed on or about the car. *Held,* that the trial justice properly charged the jury that the plaintiff was bound to prove by a fair preponderance of evidence, *first,* that the condition as it existed on the highway that day was a nuisance; *second,* that it had existed for so long a period of time that the city in the exercise of reasonable care and diligence on its part should have discovered and remedied it in order to perform the duty which rested upon it under the law to make its highways safe; *third,* that the plaintiff was bound to show that he himself was not guilty of any negligence which contributed to his injury and that he was exercising ordinary and reasonable care under the circumstances as they existed there for his own protection; *fourth,* that the plaintiff was a lawful traveler on the highway and was properly and lawfully where he was when he was injured and it was for the jury to determine as a question of fact whether he had assumed the risk. At most, plaintiff was a loiterer or casual observer upon the street and was not a spectator voluntarily consenting to or assuming the risk of injury. (Second Class Cities Law [Cons. Laws, ch. 53], §§ 91, 244; Labor Law, art. XV-a [Cons. Laws, ch. 31; Laws 1905, ch. 685, § 17]; *Johnson* v. *City of New York,* 186 N. Y. 139, 151, distinguished.)

*Schmitt* v. *City of Syracuse,* 190 App. Div. 930, affirmed.

(Argued April 3, 1920; decided June 1, 1920.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 8, 1920, unanimously affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edmund H. Lewis, Corporation Counsel,* for appellant. The trial court committed error in withdrawing from the jury consideration of the question whether the plaintiff at the time of the accident was a spectator to or participant in the circumstances surrounding the explosion. (*Johnson* v. *City of New York,* 186 N. Y. 139;

*Bogart* v. *City of New York,* 200 N. Y. 379; *Heffern* v. *Village of Haverstraw,* 143 App. Div. 527; *Scanlon* v. *Wedger,* 156 Mass. 462.)

*A. Lee Olmsted* for respondent.

CRANE, J.   Prior to May 22d, 1915, a boy two years of age had fallen from a bridge which spanned Onondaga creek at Taylor street in the city of Syracuse and had evidently been drowned.   The coroner of Onondaga county with the aid of his assistants had dragged the creek for several days in an unsuccessful effort to recover the body.   As a last resort he determined to use dynamite to bring the body to the surface and fired the explosions at a point in Onondaga creek near Spencer street.   The dynamiting was under the direct supervision of a man named Ross employed by the coroner who was assisted by two of the coroner's regular assistants.

The second deputy commissioner of public works was a man named Murray Street.   On the evening of May 21st, Street was informed by the coroner that dynamite was to be used the next day in the creek and arrangements were made to get some dynamite belonging to the city. Street sent his chauffeur, Emig, the next morning with forty sticks of dynamite over to the corner of Maltbie and Spencer streets where he found Ross and the two assistants with a Ford car.   This car was a delivery car having a black box behind the driver's seat about four feet square with doors on the back end.   The dynamite was taken from Emig's automobile and put in the box of the Ford car.   In the box were also some caps and a little fuse.   Street thereafter procured a box of fulminate of mercury caps and he and the coroner went over to Maltbie street where Ross was preparing the dynamite.   While Street was there ten or fifteen sticks were made ready for exploding.   The sticks of dynamite were taken over to the creek in a market basket and thrown into the creek.

The explosions continued with loud report during the morning.

After the noon hour one hundred more sticks of dynamite were brought and placed in the Ford car which at that time was in Spencer street about forty feet west of the corner of Maltbie street. While Ross was preparing the sticks for firing an explosion occurred causing damage to adjoining property and death and injury to bystanders. This was May 22d, 1915. No danger signal was displayed in the street or on or about the Ford car during this time.

The plaintiff in this case, a boy seventeen years of age, had finished his work for the day, it being Saturday, and had gone to Hendrick's art store with a delivery boy who worked there. This boy had a package to deliver on West Genesee street, which runs east and west, about two blocks south of the place of the accident. The boys rode their bicycles out West Genesee street and delivered the package. On their way back they heard the explosions and rode over to Maltbie street to see what was going on. At this time there were fifteen or more people around the car. The plaintiff stood six or eight feet from it at the time of the explosion. He was very seriously hurt.

Section 91 of the Second Class Cities Law (Cons. Laws, ch. 53) makes it the duty of the commissioner of public works to inspect the streets with sufficient frequency to ascertain their condition and cause the same to be kept free from obstructions and in good condition and repair and reasonably safe for public use.

Article XV-a of the Labor Law (Cons. Laws, ch. 31) regulates the use, transportation and storing of explosives. Chapter 685 of the Laws of 1905, entitled "An act to supplement the provisions of law relating to the department of public safety of the city of Syracuse," section 17, enacts: " No person shall manufacture, compound, transport, store, sell or offer or keep for sale or use, have or keep

for use within said city any dangerous, explosive, combustible or inflammable compound, mixture, material or substance of any name or nature whatsoever except in accordance with such regulations governing and restricting the same, and under a permit issued by said commissioner of public safety therefor, whenever said regulations shall require the same."

These laws were not complied with.

Section 244 of the Second Class Cities Law contains a provision that no civil action shall be brought against the city to recover for damages sustained in consequence of the defective condition of the streets unless written notice of such defective or dangerous condition shall have been given to the commissioner of public works or in the absence of such notice unless it appears that such defective, unsafe and dangerous condition existed for so long a period that the same should have been discovered and remedied in the exercise of reasonable care and diligence.

On the trial of this action to recover damages for the injuries received by him, the plaintiff had a verdict from the jury in his favor and the judgment entered thereon was unanimously affirmed by the Appellate Division.

The recovery followed the law laid down in *Dzingelewski* v. *City of Syracuse* (181 App. Div. 917), leave to appeal in that case having been denied by this court. In the present case, however, this court has granted leave to appeal in order to review a point of law not raised in the other case.

The trial justice properly charged the jury that the plaintiff was bound to prove by a fair preponderance of evidence three things, *first*, that the condition as it existed on the highway that day was a nuisance; *second*, that it had existed for so long a period of time that the city in the exercise of reasonable care and diligence on its part should have discovered and remedied it in order to perform the duty which rested upon it under the law to make its highways safe, and *third*, that the plaintiff was bound

to show that he himself was not guilty of any negligence which contributed to his injury and that he was exercising ordinary and reasonable care under the circumstances as they existed there for his own protection.

He further charged that the plaintiff was a lawful traveler on the highway and was properly and lawfully there where he was when he was injured. To this latter charge exception was taken.

The point now raised by the city on its appeal to this court is that the plaintiff was a spectator within the meaning of *Johnson* v. *City of New York* (186 N. Y. 139, 151) and, therefore, could not recover even though the city were negligent. The plaintiff in the *Johnson* case was struck by an automobile while witnessing a race of machines in a public highway in the borough of Richmond in the city of New York. The city had illegally authorized the use of the public highway as a race course, but it was held that the plaintiff could not recover under the general maxim *injuria non fit volenti,* as she had gone to the place for the purpose of witnessing the race and seeking pleasure and enjoyment therefrom. Particular attention, however, was drawn to the limitations of this rule by CULLEN, Ch. J., in these words: " It must be distinctly borne in mind in this case that as already said the plaintiff was not a casual spectator, whose attention might naturally be drawn to any remarkable occurrence on the highway and thereby loiter for some short period without losing her rights as a traveler, but one who went to the place expressly to see the exhibition."

It was further stated that *Norristown* v. *Moyer* (67 Penn. St. 355), in holding that loitering in the public highway would *per se* preclude a recovery for negligence, would not receive the assent of this court. *Scanlon* v. *Wedger* (156 Mass. 462), cited in the *Johnson* case, held that a voluntary spectator who was present merely for the purpose of witnessing a display of fireworks must be held to have consented to it and to have suffered no legal

wrong if accidentally injured without negligence on the part of any one, although the show was unauthorized. He took the risk. Pollock on Torts (138–144) is given as authority for the proposition. This treatise on the law of torts says: "A man can not complain of harm (within the limits we have mentioned) to the chances of which he has exposed himself with knowledge and of his free will."

We do not think the plaintiff in this case came within the ruling of the *Johnson* case, but rather within the exception noted. He had not gone upon the public streets for the purpose of witnessing an exhibition, the nature and risk of which he was shown to have been fully aware. He was a traveler upon the streets, attracted by the noise of an explosion and with his companion rode down two blocks to see what it was all about. While as a casual observer watching men at work about the Ford car it blew up causing the injury. The plaintiff may have known that dynamite was being exploded and that dynamite was dangerous, but it cannot be said as a matter of law that he knew or should have known that the work done at the Ford car, which was that of preparing the charges and not that of exploding dynamite, was necessarily dangerous or that he fully appreciated the extent of the risk. At most, he was a loiterer or casual observer upon the street and was not a spectator voluntarily consenting to or assuming the risk of injury. The judge properly charged the jury that the plaintiff was lawfully upon the street, but left it to them to determine as a question of fact whether he had assumed the risk. He told the jury: "That if the plaintiff knew or should have known by the exercise of ordinary care and prudence and diligence that he was standing in a place of danger and after being warned back he neglected to do so as a result of which he was injured then he was guilty of contributory negligence and could not recover."

We see no other point in the case that needs discussion

and, therefore, affirm the judgment appealed from, with costs.

HISCOCK, Ch. J., CHASE, HOGAN, CARDOZO, MC-LAUGHLIN and ELKUS, JJ., concur.

Judgment affirmed.