*124 OPINION OF THE COURT
Laura Safer Espinoza, J.
The defendant initially was charged with, inter alia, disorderly conduct (Penal Law § 240.20 [5]). The People orally amended the complaint to add criminal nuisance (Penal Law § 240.45 [1]), based on the same allegations. The accusatory instrument reads, in pertinent part, that the deponent "observed an ambulance parked in the middle of the street * * * blocking] traffic, including other ambulances, forcing all traffic to back up and pass via a different street [and 45 minutes later] observed the defendant attempt to drive off in said ambulance after refusing to provide the deponent with his license.” The defendant moves to dismiss the count of criminal nuisance and to suppress statements attributed to the defendant.
While the disorderly conduct statute charged here specifically concerns the obstruction of traffic,[1] it is less clear whether the current criminal nuisance statute[2] was intended to encompass such acts. Since the Legislature chose to designate disorderly conduct as a violation while making criminal nuisance a "B” misdemeanor, the latter requires something more than the former in order to justify the enhanced exposure to more severe penalties.
The drafters of the criminal nuisance statute contemplated that subdivision (1) would in most cases apply to "the maintenance of manufacturing plants, entertainment resorts and the like, which, by virtue of excessive noise, noxious gases, etc., annoy or offend groups or areas of the community”. (Commn Staff Notes, reprinted following NY Cons Law Serv, Book 23B, Penal Law § 240.45, at 277.) While the People correctly assert that this does not necessarily limit the applicability of this statute to other situations, it is noteworthy that, when the Legislature revised the Penal Law in 1965, it dropped from the former nuisance statute all language specific to the obstruction *125 of streets and highways[3] and created a new subdivision of disorderly conduct to prohibit the obstruction of traffic (Penal Law § 240.20 [5]). It would appear then that the legislative intent was to confine such acts to the disorderly conduct section rather than the criminal nuisance section of article 240.
The last reported cases of criminal nuisance for the obstruction of public highways were decided during the early part of the century under the former nuisance statutes. (People v Kings County Iron Foundry, 209 NY 207 [1913] [obstruction of streets is criminal nuisance]; Johnson v City of New York, 186 NY 139 [1906] [appropriating section of city street for automobile races is nuisance despite permission under city ordinance]; Town of Albion v Ryan, 201 App Div 717 [1922] [injunction granted since defendant’s excavation of trench across highway, which was neither temporary nor reasonable, was criminal nuisance]; People v Eckerson, 133 App Div 220 [1909] [excavation 200 feet from street reasonably certain to produce sliding down of highway was not criminal nuisance because no present danger].) Most of the cases dealt with physical obstructions which remained for a period of time; there appears to be little precedent, even under the former statutes, for charging a single motorist with a temporary obstruction of the streets. While the First Department, relying solely on Johnson (supra), affirmed a conviction for homicide while committing a misdemeanor, based on evidence of criminal nuisance where a motorist had sped down a street where children were playing, resulting in one death (People v Darragh, 141 App Div 408 [1st Dept 1910]), this is an isolated instance which may have been due to the severity of the harm done. Another appellate court reached a contrary result where the harm was not severe, refusing to find that driving on the left side of the road was criminal nuisance, even though the driver struck another car. (People v Martinitis, 168 App Div 446 [2d Dept 1915].)
Whatever the limits to criminal nuisance for situations involving an obstruction of the streets under the old statute, this court has found no such cases under the current criminal nuisance statute, despite extensive research. This may well reflect the law’s adjustment to changing social reality and/or *126 the higher standard contained in the new statute.[4]
[5]With the increase of automobiles and congestion on public streets, a recognition that modern motorists would be subjected more regularly to inconveniences and annoyances caused by double-parked cars and other intermittent obstructions may have led to a belief that illegal acts of obstruction should normally be punishable as a violation rather than as a misdemeanor.
A careful analysis of the acts attributed to the defendant in the case at bar fails to convince this court that criminal nuisance is a proper charge. One distinguishing element of nuisance is that it requires a continuing condition (People v Gallucci, 62 AD2d 1129 [4th Dept 1978]), as opposed to an isolated act that more properly falls under disorderly conduct. Indeed the drafters, recognizing that the two crimes were similar, specifically noted in the Commission Staff Notes to the revised Penal Law that, "[generally speaking * *" * disorderly conduct relates to a specific act or acts of brief duration® while nuisance involves the creation or maintenance of a continuing condition.” (Commn Staff Notes, op. cit.) It is the opinion of this court that in the case at bar the isolated act of blocking traffic by parking in the middle of the road, even for a period of time, is not a "continuing” condition. (The court notes that, although it is alleged that the ambulance was parked for approximately 45 minutes, it appears that at least part of this time was due to defendant’s disputes with various police officers at the scene as evinced by the allegation in the complaint that he had refused to hand over his license, an inference also supported by the statements attributed to the defendant in the People’s Voluntary Disclosure Form.)
Furthermore, endangering the public’s health or safety, as required to prosecute under criminal nuisance, is a higher standard than causing "public inconvenience, annoyance or alarm”, which is required for disorderly conduct. (See, e.g., People v Ely, 83 Misc 2d 656 [Saratoga County Ct 1975] [crimi *127 nal nuisance not found where defendant often let horses run free because no endangerment to health or safety of community, despite harm caused to real property].) The allegation that motorists had to go around the block to avoid the temporary obstruction, while likely to cause annoyance or inconvenience, is insufficient to support the element of endangerment. The mere fact that ambulances were part of the blocked traffic is not enough; it is not alleged that the delivery of ambulance service to the community at large was affected in any way by the defendant’s acts.
The court also notes the complete lack of allegations attributing any acts to the defendant other than attempting to drive away: the complaint fails to attribute the parking of the van to the defendant and/or even to place him in the van prior to his attempt to move it. Thus the only allegation is that the defendant acted in effect to abate any possible "nuisance” by getting the van out of the way of traffic, not that he either created or maintained the condition in the first place or acted in concert with anyone who did. There must be some nexus between the defendant and the nuisance alleged. (People ex rel. Bushnell v Midland Terrace Corp., 45 NYS2d 642 [Westchester County Ct 1943] [reversing conviction for criminal nuisance where only proof that defendants created the condition complained of was their application for a permit to perform excavation]; People v Metropolitan Traction Co., 50 NYS 1117, 1122 [Gen Sess, NY County 1897] [dismissing indictment against street car company for nuisance arising from propelling street cars at high rate of speed around curve where numerous accidents occurred because no evidence to connect defendants to accidents].)
The People have also failed to allege facts to support that the defendant acted "knowingly and recklessly.” "The Legislature, in re-enacting the revised Penal Law now in effect, recognizing the unfairness, indeed the practical impossibility, of imposing criminal liability for what is essentially a civil action in equity, carried forth these provisions in a form which now requires specific intent, a requirement not present under the old statute.” (People v Markovitz, 102 Misc 2d 575, 579 [Crim Ct, NY County 1979].) The present statute "demands greater culpability and injects greater criminal dimension by requiring that the proscribed condition be created or maintained 'knowingly or recklessly’, that is, with full awareness and a conscious disregard of the injurious conditions created or of the risk thereof.” (Donnino, Practice Commentaries, Me- *128 Kinney’s Cons Laws of NY, Book 39, Penal Law § 240.45, at 274.) Since the complaint does not make clear what injurious conditions or risk thereof were created when the ambulance was improperly parked, or even that the defendant was the person who parked it, it is impossible to impute the requisite mens rea to the defendant. The only state of mind directly indicated in the complaint is that the defendant intentionally attempted to move the van.
The Court of Appeals, in delineating the differences between public and private nuisance and the applicability of civil and criminal sanctions, aptly noted that " ’ [tjhere is perhaps no more impenetrable jungle in the entire law than that which surrounds the word "nuisance”. It has meant all things to all men.’ ” (Copart Indus. v Consolidated Edison Co., 41 NY2d 564, 565 [1977] [quoting Prosser, Torts, at 571 (4th ed)].) Nuisances once considered severe enough to warrant criminal sanctions may become more tolerable to society as public mores change. (See, e.g., People v Doris, 14 App Div 117, 119 [1st Dept 1897] ["It is well settled that whatever outrages public decency and is injurious to public morals is indictable”, holding that a parody of a wedding night, without indecent exposure or overt sexuality, excited "impure imagination” and thus was criminal nuisance].) Whether double-parked cars are ever intolerable enough to rise to the level of criminal nuisance, rather than merely disorderly conduct, need not be decided today, however, but only whether the specific allegations here, if true, support each and every element of the statute. As discussed above, in the opinion of this court, they do not.
Accordingly, the defendant’s motion to dismiss the count of criminal nuisance is granted. (People v Alejandro, 70 NY2d 133 [1987].) The defendant’s motion to suppress statements is granted only to the extent that a Huntley hearing will be held.

. "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof * * *
"5. He obstructs vehicular or pedestrian traffic.” (Penal Law § 240.20 [5].)

. "A person is guilty of criminal nuisance in the second degree when:
"1. By conduct either unlawful in itself or unreasonable under all the circumstances, he knowingly or recklessly creates or maintains a condition which endangers the safety or health of a considerable number of persons.” (Penal Law § 240.45 [1].)

. Subdivisions of the predecessors to the current statute specifically prohibited as a "public nuisance” acts which "Unlawfully interferfed] with, obstructfed], or tendfed] to obstruct, or render[ed] dangerous for passage * ** * a public * * * street or highway.” (Former Penal Law § 1530 [3]; Penal Code § 385 [3].)

. Both former Penal Law § 1530 and its predecessor Penal Code § 385 contained a lower standard of harm than the current criminal nuisance statute. Subdivision (1) prohibited acts or omissions which "[a]nnoy[ed], injurefd] or endanger[ed] the comfort, repose, health or safety of any considerable number of persons,” while no harm was required for unlawful obstruction of streets under subdivision (3).

. However, some acts of obstructing traffic may be too de minimis to even rise to the level of disorderly conduct. (People v Pearl, 66 Misc 2d 502, 502-503 [App Term, 1st Dept 1971] ["something more than the temporary inconvenience caused to pedestrians by the demonstrators’ blocking of the * * * crosswalk, requiring them to enter the roadway to get to the other side, was required to sustain a conviction for obstructing pedestrian traffic”].)