MARY C. BOGART, as Administratrix of the Estate of JOHN BOGART, Deceased, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

**Municipal corporations — when municipality not liable for injuries received by spectator of automobile races permitted on public highway — evidence — conjectures or conclusions of witness not competent evidence of a fact.**

A spectator attending an automobile race to witness and enjoy the contest, who was injured while near the highway on which the races were run, is not entitled to recover against a municipality which granted permission for such races, although the use of a public highway for that purpose is illegal. (*Johnson* v. *City of New York*, 186 N. Y. 139, followed.)

The conjecture or conclusion of a witness is generally improper and incompetent and should not be allowed as testimony in a case. The facts and circumstances should be given from which the intention or expectation of the person under consideration can be determined as a fact.

*Bogart* v. *City of New York*, 138 App. Div. 888, reversed.

(Argued December 15, 1910; decided January 10, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 11, 1910, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Archibald R. Watson, Corporation Counsel* (*Theodore Connoly* of counsel), for appellant. The verdict was contrary to the law and the evidence. (*Baxter* v. *A. & S. E. R. Co.*, 190 N. Y. 439.) The striking out of evidence by the trial justice was fatally erroneous. (*Miller* v. *Montgomery*, 78 N. Y. 282; *Matter of Lasar*, 131 N. Y. 624; *Plum* v. *M. S. R. Co.*, 91 App. Div. 420; *Parsons* v. *N. Y. & H. R. R. R. Co.*, 113 N. Y. 355; *Parkhurst* v. *Bedell*, 110 N. Y. 386.)

*Frank J. Dupignac* and *Dudley Dupignac* for respondent. The action of the court in striking out incompetent evidence was within the power of the court. It was the result of the exercise of a wise, prudent and just discretion. (*Comm.* v. *Trepethen,* 157 Mass. 180; *Newman* v. *Ernst,* 10 N. Y. Supp. 310; *McCarney* v. *People,* 83 N. Y. 408; *People* v. *Parish,* 4 Denio, 153; Abb. Tr. Brief [2d ed.], 447; *Miller* v. *Montgomery,* 78 N. Y. 282; *Plum* v. *Met. Ry. Co.,* 91 App. Div. 420; *Parkhurst* v. *Bedell,* 110 N. Y. 386; *Matter of Lasak,* 131 N. Y. 624.)

Chase, J. On May 31, 1902, certain automobile races or speed trials were run under the direction and auspices of the Automobile Club of America. The races were run upon a public highway known as the Southside boulevard, in the borough of Richmond, city of New York, and were authorized by a resolution of the board of aldermen of the city of New York, of which resolution the following is a part, viz., "That upon the recommendation of the local board, First district, borough of Richmond, permission be and the same is hereby given to the Automobile Club of America to conduct speed trials for automobiles on the Southside boulevard in the fourth ward of the borough of Richmond on Saturday, May 31, 1902, between the hours of eleven o'clock A. M. and four o'clock P. M.  *  *  *."

Elaborate preparations were made to care for the visitors that might attend the races and more than one hundred policemen were specially detailed to patrol the boulevard and its locality during the hours in which the races were to be run.

A street surface railroad corporation engaged in operating a line of trolley road over Lincoln avenue extending from some point west of the boulevard to Midland Beach, a point east of the boulevard, allowed its tracks crossing the boulevard to be taken up, and the schedule of cars to be run on such road for the day to be so changed that cars from the west ran to the boulevard and returned and cars from Midland Beach ran to

the boulevard and returned to such point.  Persons desiring to travel beyond the boulevard in either direction were given transfer tickets for use on the cars after crossing the boulevard.  People crossed the boulevard at Lincoln avenue, however, whether they had trolley transfers or not, providing a certain signal bell or gong was not ringing.

An accident occurred to one of the automobiles while running in a speed contest, which caused it to swerve from the track and dash among the spectators near Lincoln avenue.  It resulted in several persons being killed and the serious injury of others.  One of the persons injured was Louisa Johnson.  She brought an action against the city of New York, the Automobile Club of America, and others, and recovered a judgment which was affirmed on appeal to the Appellate Division.  An appeal was taken therefrom to this court, and it was held that the use of a public highway for such races is illegal, but that the judgment in favor of the plaintiff must be reversed for reasons stated in the opinion.  (*Johnson* v. *City of New York*, 186 N. Y. 139.)  In the opinion this court say: " But granting that the action of the defendants in the use of the highway was illegal, the question remains, was it illegal against the plaintiff so as to render the parties participating therein liable to her solely by reason of the illegality of their acts and regardless of any element of negligence or other misconduct.  If the plaintiff had been a traveler on the highway when she met with injury a very different question would be presented.  Highways are constructed for public travel, and, as already said, the acts of the defendants were doubtless an illegal interference with the rights of the traveler.  It may well be that for an injury to the traveler or to the occupants of the lands adjacent to the highway, or even to a person who visited the scene of the race for the purpose of getting evidence against the defendants and prosecuting them for their unlawful acts, the defendants would have been absolutely liable regardless of the skill or care exercised.  But the plaintiff was in no such situation.  She was not even a casual spectator whose attention was drawn to the race while she

was traveling in the vicinity. She went from her home, a distance of five miles from the scene of the race, expressly to witness it and to enjoy the pleasure that the contest offered. As to the elements which made the contest illegal she was aware of their existence. She knew it was to take place on a highway, and she knew it was to be a contest for speed, and that, therefore, the automobiles would be driven at the greatest speed of which they were capable." (p. 146.)

The plaintiff's intestate, in this case, was killed at the same time and by reason of the same accident and circumstances that resulted in the injury to Louisa Johnson.

It is not claimed by the plaintiff that the defendant was negligent in the conduct of the races. It may be assumed that the defendant is liable to the plaintiff for any injuries to her arising from the illegal use of the highway, if her intestate was injured while using the highway as a traveler. If, however, the intestate was injured while a spectator in attendance at the races to witness them and enjoy the pleasure that the contest afforded, the plaintiff is not entitled to recover, and the judgment should be reversed.

The intestate was a carpenter; he had lived on Staten Island for many years, and at the time of his death he was sixty-eight years of age; his home was at Castleton Corner, about seven or eight miles from the place where the accident occurred.

On the morning of the races he was engaged in building a fence near his home; between ten and eleven o'clock he left his work and went to his home and changed his working clothes for other clothes and left the house; before leaving the house he asked his daughter if she would like to go with him, but she made some excuse and did not go. He left home shortly after ten o'clock or between ten and eleven o'clock. It was about thirty minutes' ride by the trolley car on Lincoln avenue from the intestate's home to the boulevard. He was seen at the boulevard to get off a Lincoln avenue trolley car that arrived from the direction of Castleton Corner between eleven and twelve o'clock on the day of the accident. The

person who was employed as a trolley car starter on the west side of the boulevard saw him get off the car, but did not see where he went therefrom and it does not appear that he asked for or obtained a transfer ticket. About fifteen or twenty minutes before the accident he was seen crossing the boulevard. A neighbor of his came down on a trolley car with a friend to go to Midland Beach. At the boulevard they obtained transfers and crossed to the east side and while standing there waiting for a car they saw the testator again cross the boulevard and as he approached them with his back to the boulevard, he said " good morning " and before they could say anything more the accident occurred and he suffered the injury from which he died shortly thereafter.

Without any other evidence to show that the intestate was a traveler on the public highway the court charged the jury as follows : " Was he present as a spectator of the display, a participant in what took place ? If he was, I charge you that she may recover. If he went there as an express inspector to take part in this exhibition, to satisfy his pleasure, or his curiosity, she may not recover in this case. Upon that point, gentlemen, you will consider all the evidence. Consider the evidence of the witnesses as to what time he was seen there, how long he loitered there, when he left his home, the distance of the home from the point of the accident, the time within which the distance could be traversed, the space of time between his arrival at the place, if you find evidence of that time and the happening of the accident, the testimony of the witness who testified that he bid her the time of day going on his way in the direction of Midland Beach."

The jury found in favor of the plaintiff, and the judgment entered thereupon was affirmed by the Appellate Division by a divided court.

We are unable to find in the record any evidence whatever to sustain the conclusion of the jury that the plaintiff at the time of the accident was a traveler upon a highway. There is no evidence that he was on his way to Midland Beach, or that he was stopping at the boulevard casually waiting for a car on

which to continue his journey. The accident occurred at about one o'clock. The testator arrived at the boulevard at some time between eleven and twelve o'clock, and there is nothing from which to infer that he went to the boulevard or remained there one or more hours other than as a spectator. The record being wholly without evidence to sustain the verdict of the jury, the judgment must be reversed.

The defendant has urged that the judgment should also be reversed by reason of an alleged error of the court in striking out certain evidence of the plaintiff during her cross-examination. We think the evidence should not have been received by the court, and we give expression to our views in regard to its competency because of the possibility of the question again arising in case of a new trial. On the cross-examination of the plaintiff questions were asked and answered as follows : " Q. You knew, did you not, when he went out that he was going to see the automobile races ? A. Well, he expected to go there and to go to the beach at the same time. Q. You knew he expected to go to see the races ? A. Yes."

Subsequently the answers were stricken out upon motion of the plaintiff. It is interesting to note that the only suggestion in the record that the intestate expected to go to the beach or to any point other than the races appears in this testimony so stricken out on motion of the plaintiff.

The declaration by a person of his intention made without premeditation in connection with starting to do a thing or of proceeding upon a journey, and simultaneously therewith, is some times received in evidence when all of the circumstances and surroundings verify the disinterestedness of the declaration. The evidence stricken out by the court was not even the alleged declaration of the intestate, but the witness was cross-examined upon the subject upon which she had not been interrogated by her counsel and she was asked directly as to the testator's expectation when he left his work and proceeded easterly in the direction of the races. When a witness is interrogated for the purpose of ascertaining the intention or expectation of another it should be as to the acts

or statements (when admissible) of the other person from which his intention or expectation can be ascertained.

When a person declares the intention or expectation of another apart from the acts or statements from which the conclusion is derived, it is manifest that his declaration is a mere conjecture or a conclusion derived from other facts. The conjecture or conclusion of a witness is generally improper and incompetent and should not be allowed as testimony in a case. The facts and circumstances should be given from which the intention or expectation of the person under consideration can be determined as a fact.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT, HISCOCK and COLLIN, JJ., concur.

Judgment reversed, etc.