[Civ. No. 1166.   Third Appellate District.—November 11, 1913.]

## OTIS F. JOHNSON, Respondent, v. RELIANCE AUTO-MOBILE COMPANY (a Corporation), Appellant.

NEGLIGENCE—AUTOMOBILE RACE—INJURY TO SPECTATOR—EVIDENCE.—In this action to recover for personal injuries sustained by a spectator at an automobile race by being struck by one of the cars as it swerved from its course on the breaking of the steering knuckle, the evidence does not establish that the car was entered in the race by authority of the defendant corporation, or that the driver was its agent or employee, or that he was negligent in managing the car.

ID.—AUTHORITY OF SECRETARY OF CORPORATION TO ENTER AUTOMOBILE IN RACE.—The secretary of a corporation engaged in selling automobiles has no authority, as such, to use its name in entering cars in races and thereby render it liable for the consequences thereof.

APPEAL from a judgment of the Superior Court of Alameda County and from an order refusing a new trial. F. B. Ogden, Judge.

The facts are stated in the opinion of the court.

Lewis F. Byington, for Appellant.

Austin Lewis, and R. M. Royce, for Respondent.

CHIPMAN, P. J.—Action for personal injury.   The charging part of plaintiff's amended complaint is as follows:

"That on the 23d day of October, 1909, plaintiff was in an orchard known as Stanley orchard, Stanley Road near San Leandro, in the county of Alameda, state of California, and was then and there watching the course of the automobile race hereinafter mentioned, which said race was then being held and conducted.   That the said orchard marched (sic) upon the highway hereinafter mentioned.

"That on the said date defendant corporation was the owner and in the possession of a certain Knox automobile, and had entered the said Knox automobile for the Oakland Portola automobile race, the said Knox automobile being numbered as eleven (11) in the said race and was entered for events one (1) and three (3) and the driver of said automobile was Frank Free.

"That during the progress of the said race when the said automobile arrived at a position on the highway opposite to the orchard in which plaintiff was standing, the said Frank Free carelessly and negligently turned the said automobile off the said road and ran it into the said orchard where it knocked down a tree in its course and thereafter ran into and knocked down plaintiff herein, and inflicting upon him the injuries hereinafter set forth."

It is further alleged that the Frank Free above mentioned was, in the original complaint, made a defendant but is not so made in the amended complaint, but that, at the time of the accident, he was "an agent, servant and employee of said defendant corporation, and during all the times herein mentioned acted within the scope of his said employment."

The answer is a specific denial of the material averments of the amended complaint and alleges "that plaintiff was negligent and careless, and assumed risks and hazards, together with the dangers arising therefrom, in and about the alleged matters in said complaint referred to, which negligence and carelessness and risks and hazards proximately contributed to and caused his alleged injury and damage."

At the close of plaintiff's testimony and also at the close of the evidence in the case defendant's motion for nonsuit was denied. The cause was submitted to the jury and plaintiff had the verdict.

Defendant appeals from the judgment on the verdict and from the order denying its motion for a new trial.

The facts in the case appear almost entirely from the testimony of witnesses called by the plaintiff.

It appears that, on October 23, 1909, an automobile race for speed and endurance was arranged to take place along what is known as the Foothill Boulevard, between San Leandro and the city of Oakland, the cars traveling westerly toward Oakland. The event had been widely advertised and drew a large number of people. Among them was plaintiff in company with a young lady. They went at first to an elevated point to witness the race, safe from any possible danger, reaching the place about eight o'clock in the morning. They remained there until about one o'clock and, as was explained, they took a position two or three hundred feet from this first position, in an orchard bordering the boulevard, where

they would be protected from the sun by the shade of the trees. This point was about fifty or sixty feet from the boulevard and at the second row of fruit trees. There was no fence at the roadside and the only obstruction was the curb of the paved street. At the point chosen the road made a curve toward where they were standing and gave them a view of the cars as they approached the curve and also at the curve and as the cars left it speeding westward. What happened will best be stated by the witnesses. Plaintiff testified: "The last I remember we had just gotten up from sitting under a tree. It was warm that time in the day, being about one o'clock and that being the only shade around the course and we would get up every time the car came around so we could see, see it make the curve and we had just gotten up when this car made the curve, and that is the last I remember. . . . After we got up I remember seeing the car come towards the curve; and I remember there was something wrong, and that is the last I remember. . . . I judge there were 50 or 60 people in that particular part of the orchard. They were watching the race." Mrs. Johnson, who became plaintiff's wife after the accident, testified: "We were watching the automobiles make the curve, and one of them came around the curve and swerved towards where we were standing. Ran over the curb into the orchard and struck, Mr. Johnson. It just grazed past me." Witness Adams testified: "I was about 400 or 500 feet westerly from the scene of the accident. I saw the car when it was at the curve swerve from the road and go into the orchard. I saw the young man start to run. I thought he ran about 25 feet when he was struck by the automobile. I believe the car was going along the road about 60 miles an hour."

Witness Henderson was on horseback on the Stanley road, leading across the boulevard, not far from plaintiff's position. He testified: "There is a curve beyond the Stanley orchard to the east, and from the orchard I could see the cars turn the curve and dash up towards the orchard. . . . It is about the lowest place along the boulevard. . . . If the automobile went straight ahead at that point it would hit the Stanley road, about the intersection there. The man was trying to turn on the curve and it turned some and started to skid, it seemed to be skidding. He was too close to the curb and he seemed

to be afraid to strike it broadside and turned into it. I think it passed partially around the curve then. It seemed to be skidding. If he had hit the curb broadside the way he was going he would have turned over. I mean the curb on the hill side, the orchard side. He tried to turn to the left. I saw him give an effort at the wheel. It seemed to me the automobile passed over Johnson.'' Witness Frank Free, called by plaintiff, testified: ''I am an automobile driver. October 23, 1909, I was driving a Knox car, number 11, in the Portola race in Alameda County. That car ran into this orchard and hit Mr. Johnson.'' Mr. Royce (counsel for plaintiff): ''Q. Before the car left the road the steering pin broke, did it not? A. Yes, sir. The Court: Q. Did you enter it in the race? A. Mr. Charles Richardson. Q. And who was Mr. Charles Richardson? A. As to that I could not say. . . . Q. And for whom were you running it? A. Mr. Charles Richardson.'' He testified that he had driven the car in the ''tryout''; brought it from the Reliance automobile garage on Van Ness Avenue; that he did not then know that Mr. Richardson was an officer of defendant company; that ''he was told by the racing committee that Mr. Richardson attended to the details of entering the car''; that he did not know Mr. Crim, the president of the company; that his negotiations were all with Mr. Richardson by mail; that Mr. Richardson was the only man he had any conversation with about the car; the car ''was shipped out from the Knox factory to run in this race. The Court: Q. Were you connected in any way with the Reliance Automobile Company? A. Just for the race, that's all. Q. How were you connected with the Reliance Automobile Company for this race? A. Well I was employed by Mr. Charles Richardson; whether he had anything to do with the Reliance Automobile Company, or with the Knox factory, I do not know. I had all my dealings with him. . . . I do not know who owned the Knox car at the time of the race. I do not know to whom it was shipped.'' Cross-examination. To Mr. Byington, attorney for defendant: ''When the car reached the curve at the orchard the steering knuckle broke. It is an arm that fits in the spindle. . . . The steering knuckle is the part of the steering apparatus which connects the front axle with the steering gear. And that broke as I was making the turn

And when that broke I lost control of the car." . . . To Mr. Royce: "Q. You are a professional driver, are you not? A. Yes, sir. Q. In whose employ were you at the time of the race? A. Mr. Charles Richardson. Q. Did he pay you personally? A. Yes, sir. Q. Did he pay you in the name of the Reliance Automobile Company? A. He paid me in cash. I do not think I gave a receipt. I drew some money before the race. I think I was paid over here in Alameda County." To Mr. Byington: "When I reached the curve and the steering knuckle broke I lost all control over the car. . . . When the car reached this curve and the steering knuckle broke the car jumped over the curb and into the orchard. It' plunged straight ahead. I at once threw on the brakes. The rear wheels were as near blocked as they could be. It was impossible to guide or direct the car around the curve. The car had been carefully examined by me and by a skilled mechanic before starting on the race, and every part of it found to be in good condition. The steering gear was not broken before it reached that curve. . . . If there was any defect in the steering knuckle it was something that could not be seen from external observation."

Witness Crim, president of the defendant company, testified for plaintiff: that his company was, at the time of the trial, agent for the Knox cars but he could not state whether it was such agent in 1909; that he did not attend the race and did not know of it; that he did not see the Knox car in their garage before the race—their salesrooms were at 342 Van Ness Avenue and their garage at 547 Fulton Street. "Q. Did your company enter this car? A. No sir. Q. Are you positive they did not enter it? A. Yes, sir. Q. Did you arrange any of the details of this race? A. No, sir. . . . I did not know that there was a car entered in the race in the name of the company. . . . I do not know of our company ever requesting the Knox factory to send a car out here to be entered in that race. . . . Q. Did Mr. Richardson have power to enter automobiles in races for the company? A. No sir. Mr. Royce: I think that is all." On cross examination: "The Reliance Automobile Company did not enter the Knox car in that race."

There was some testimony at this point that, in May, 1910, Mr. Austin Lewis, one of plaintiff's attorneys, wrote to Mr.

Crim soliciting an interview with regard to this accident. A meeting took place subsequently with Mr. Lewis at which Mr. Crim said that Richardson was secretary and treasurer of defendant company and "had charge of the stores but had no power to enter automobiles in races." Mr. Lewis testified that at the interview he showed Mr. Crim a program of the Portola race which read: "Car number 11; entered events 1 and 3; name of car Knox; piston displacement 373.06; entrant Reliance Auto Co.; driver Free; mechanic Robinson." On objection of defendant, the court ruled that "you have no right to introduce this document in evidence except as a part of a conversation, and it does not prove the facts which the entry itself may state." Mr. Lewis testified that he showed Mr. Crim this document and he replied that "he would have to consult his stockholders before taking any action in the matter." "The Court: Q. What, if anything, did he say in reference to the entry of the car by the Reliance Automobile Company? A. No discussion was had with regard to the entry for the automobile company." Mr. Royce, still later, saw Mr. Crim "in regard to a proposed compromise of this action." He testified: "I spoke to Mr. Crim and asked him about that compromise we were suggesting. He said, 'Well, I have seen the stockholders, and we have decided not to accept.' And I said, 'What's the matter; the compromise is reasonable enough.' 'Well,' he said, 'you ask too much.' That is about all."

Witness Richardson, called by plaintiff, testified that he was the secretary and treasurer of defendant company on October 23, 1909; and "there is no such office as manager of the company." He was asked who gave the committee in charge of the race the information for entering the car and answered: "I did." Mr. Royce: "Q. Did you see the entry made when you were there? A. Yes, sir. To the best of my recollection, I think the entry was made in the name of the Reliance Automobile Company. The Reliance Automobile Company was engaged in the automobile business in San Francisco." To Mr. Byington: "I personally entered the car in the race." Plaintiff rested. A motion for nonsuit, on grounds hereinafter stated, was made and taken under advisement and defendant ordered to proceed.

The testimony for defendant was substantially the same as given for plaintiff and explained a little more fully what appeared in the testimony for plaintiff. Witness Free described the Knox car and the examination made of it before the race and repeated his testimony as to the breaking of the steering knuckle. Witness Robinson was Free's mechanician and testified fully to the perfect condition of the car and to Free's skill as a driver; also to the breaking of the steering apparatus and loss of control of the car. Both he and Free examined the car after the accident and found the cause of the accident as they had testified.

Richardson testified as follows: "The Reliance Automobile Company never at any time authorized or directed the entry of the car driven by Mr. Free in the Portola road races, held October 23, 1909." To the Court: "It was the car of the Knox Automobile Company. It belonged to the Knox Automobile Company, and 'was returned to them. I asked the Knox factory to send it out to me for the purpose of the race. I negotiated with the company. I do not remember whether it was shipped to me or to the Reliance Automobile Company. I, personally, was acting for the Knox company, October 23, 1909, and not as a corporation. Our corporation was engaged in the business of selling automobiles. They did not sell Knox automobiles prior to October, 1909. The Reliance Automobile Company subsequently became agent for the Knox. The contract was signed, I believe, in December, 1909, or January, 1910. Q. And did the Reliance Automobile Company ever enter any car in any race of any kind? A. No, sir; it did not."

The record purported to contain all the evidence and we have given substantially all of it. At the close of defendant's evidence counsel renewed his motion for nonsuit on the grounds first stated, to wit: that plaintiff had failed to prove a sufficient case for the jury in that "plaintiff had failed to prove that defendant was the owner of, or in possession of, or had entered in any race, the automobile which caused the injury to plaintiff, or that Frank Free was the agent or employee of defendant, at the time mentioned in the complaint, and had failed to prove negligence on the part of defendant, but had proven negligence on the part of plaintiff contributing

to the injury and an assumption of risk on the part of plaintiff, resulting in plaintiff's injury."

We fail to discover any conflict in the evidence on the issues presented by the pleadings.

It is alleged in the amended complaint that the defendant "was the owner and in the possession of a certain Knox automobile, and had entered the said Knox automobile for the Oakland Portola automobile race." Also, that Frank Free, who drove the said machine, "was at all times herein mentioned an agent, servant and employee of said defendant corporation, and during all the times herein mentioned acted within the scope of his employment." It was incumbent upon plaintiff to establish these issues by a clear preponderance of evidence. The most that can be said of this evidence as to defendant's liability is—that Richardson, who at the time was secretary and treasurer of the defendant company, acting as an individual, arranged to enter the Knox car in the race; that he personally employed Free to drive it and paid him for his services. There is not any evidence that Richardson had any authority as secretary and treasurer to enter cars in races generally or in this particular race; on the contrary, the evidence is that he had no such authority and was not given any such authority in this instance; that defendant did not own the Knox car and was not the agent for its sale; that defendant had never entered any car for any race. It was not necessary to show absolute ownership in defendant; it would have been sufficient to charge it, if otherwise liable, had it been in possession and control of the car and had it entered for the race. But the proofs fall far short of showing such a state of facts. It is true that Richardson entered the car in the name of defendant company. But this was unknown to the defendant and was without its authority and it cannot be said as matter of law that he had any such authority by virtue of his office. Besides, his testimony was that he acted in his individual capacity. If we were at liberty, which we are not, to reject the evidence introduced by plaintiff, we should have to hold, in order to sustain the judgment, that the jury were justified in finding that Free was defendant's agent and was acting within the scope of his authority as such agent, and that this inference was justly derivable from the nature of the corporation and from Richardson's

relation to it as secretary and treasurer. All that the evidence discloses as to the business in which defendant was engaged is that it was selling automobiles. Richardson's duties as secretary are not shown nor are there shown any acts of his as such secretary, acquiesced in by the corporation, or any acts of the corporation itself from which an inference can be reasonably drawn that Free was driving the car in question under the authority, express or implied, of the corporation. We cannot say that the business of selling automobiles carries with it by implication the racing of automobiles in public meets of speed and endurance such as the Portola races here in question. Nor can we say that the secretary of a corporation engaged in selling automobiles has express or implied authority to use its name in entering cars and to render it liable for the consequences thereof. There can be no presumption that the secretary of a corporation is clothed with authority to do an unlawful act.

A further issue was raised by the complaint, to wit, that "the said Free carelessly and negligently turned said automobile off the said road and ran it into the said orchard and ran into and knocked down plaintiff inflicting the injuries" complained of. This is denied and it is alleged in the answer that "plaintiff was negligent and careless, and assumed risks and hazards, together with the dangers arising therefrom in and about the matters alleged in said complaint referred to, which proximately contributed to and caused his alleged injury and damage."

The evidence introduced by plaintiff shows, without substantial conflict, that the accident was not due to want of care or to the negligence of Free in driving the car. It had been thoroughly inspected by a competent mechanician and by Free himself, a skilled driver, who had driven it in the "try-outs," and was in perfect condition so far as could be detected. "When the car reached the curve at the orchard," mentioned in the evidence, "the steering knuckle broke. . . . The steering knuckle is the part of the steering apparatus which connects the front axle with the steering gear. And that broke as I was making the turn. And when that broke I lost control of the car as far as steering was concerned. . . . When the car reached this curve and the steering knuckle broke the car jumped over the curb and into the orchard. It

plunged straight ahead. I at once threw on the brakes. The rear wheels were as near blocked as they could be. It was impossible to guide or direct the car around the curve.'' This is the testimony of Free when called by the plaintiff and is confirmed by the observation of other witnesses. Plaintiff suggests in his brief that there were several theories as to what occurred, ''one that the machine was driven too near the curb; that to avoid striking the curb Free turned off the road into the orchard and the steering knuckle broke when the car crossed the curb or afterwards in the orchard.'' This suggestion is based upon the testimony of witness Henderson which we have stated in connection with that of other witnesses. No such theory can reasonably be predicated of Henderson's testimony. What he observed is entirely consistent with the testimony of Free given as plaintiff's witness and of Robinson, who was on the car, and other witnesses. Henderson testified that Free ''tried to turn to the left'' which was away from the curb. There is no dispute of the fact that the steering knuckle broke when the car was on the curve and it is not unlikely that when that happened the car, to Henderson's observation, ''seemed to be skidding.'' There is nothing in Henderson's testimony on which a theory can be based imputing negligence in Free's management of the car.

Upon this branch of the case the question presented is simply this: Where a person, as a spectator, voluntarily attends an automobile race, for speed and endurance, upon a public highway, and takes a reasonably safe position to witness the event, may he recover for an injury inflicted by one of the racing automobiles which did not result from want of care in its management by the driver, or from any known or visible defect in the car, but did result from the unavoidable breaking of some parts of the automobile? Defendant supports the negative of this position by decisions of courts of high repute. The view we have taken of the case makes it unnecessary to decide the point. We content ourselves with the citation of the cases which have been examined by us and appear to support defendant's contention: *Johnson* v. *City of New York,* 186 N. Y. 139, [116 Am. St. Rep. 545, 9 Ann. Cas. 824, 78 N. E. 715]; *Bogart* v. *City of New York,* 200 N. Y. 379, [20 Ann. Cas. 466, 93 N. E. 937]; *Heffern* v. *Village of Haverstraw* 143 App. Div. 527, [128 N. Y. Supp. 399];

*Scanlon* v. *Wedger,* 156 Mass. 462, [16 L. R. A. 395, 31 N. E. 642] ; *Frost* v. *Josslyn,* 180 Mass. 389, 62 N. E. 469] ; *Dowell* v. *Guthrie,* 99 Mo. 653, [17 Am. St. Rep. 598, 12 S. W. 900].

As we do not think there was any evidence tending to show that the car was entered in the race by the authority or with the sanction of defendant, our conclusion is that its liability is not proven.

The judgment and order are reversed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 10, 1914.