## FRAZURE v. RUCKLES ET AL.

[No. 9,085.    Filed October 4, 1916.    Rehearing denied December 12,
1916.    Transfer denied January 12, 1917.]

MUNICIPAL CORPORATIONS.—*Holding Illegal Race in Village Street.—
Injury to Spectator.—Recovery as for Illegal Act.*—While the
holding of a horse race in a village street is a violation of §§2664,
2665 Burns 1914, Acts 1905 pp. 584, 745, yet one who goes to
attend such a race as a spectator, thereby consenting to the un-
lawful act, and, while it is in progress, goes upon the street
where the race is being run and is struck by one of the horses
and injured, cannot recover, regardless of the elements of negli-
gence and contributory negligence, merely because the race was
held in violation of the law.

From Noble Circuit Court; *Samuel M. Hench,* Special
Judge.

Action by Jason A. Frazure against John Ruckles and
others. From a judgment for defendants, the plaintiff
appeals. *Affirmed.*

*H. G. Zimmerman* and *F. P. Bothwell,* for appellant.
*McNagny & McNagny* and *Grant & Foote,* for appellees.

IBACH, J.—This is an appeal on reserved questions of law
from a judgment in favor of appellees upon a complaint
by appellant for personal injuries sustained at a horse
race conducted under the direction and management of
appellees, and unlawfully run at a dangerous rate of speed
on a street and highway in and through the village of Wolf
Lake, on the occasion of a public entertainment known as
a "Grand Onion Carnival."

One who allows his horse to run in a race along a public
highway, or who acts as a rider in such race, may be pun-
ished by a fine under §2664 Burns 1914, Acts 1905 p. 584,
745; and under §2665 Burns 1914, *supra,* it is a finable
offense to run horses within the limits of a village. Appel-
lant's contention is that, since this race was run in violation
of statute, appellees who had charge of the race were liable

to appellant for the commission of a wilful injury, and that the rules of negligence or contributory negligence do not apply. The complaint contains no allegations of negligence, but proceeds on the theory of trespass or wilful injury. Appellant seeks to hold appellees liable merely because the horse race was run in violation of law, and that he was injured by one of the horses running against him.

There are various errors assigned, but the merits of the case will be considered in the discussion of instruction No. 5 given by the court to the jury at appellees' request, and what is said concerning that error will be applicable to all others presented.

Instruction No. 5 is in the following words: "If you find from a fair preponderance of the evidence in this case, that the defendants, or other persons, advertised an onion carnival at the town of Wolf Lake, Indiana, to be held on August 22 and 23, 1912, and as one of the attractions of said carnival advertised a horse race to be run thereat, and that the plaintiff then lived in Albion, Indiana, and saw and read said advertisement, and went from his said residence to said town to visit as a spectator said carnival and said horse race, and if when the plaintiff reached said town of Wolf Lake and before said horse race was run, he learned that said horse race was to be run on which is commonly called the Goshen road, and if he knew that said Goshen road was a public highway, and the principal street in said town; and if you further find that the plaintiff knew that said horse race was to be a contest of speed, and that therefore the horses participating therein would be run at the greatest speed of which they were capable, and if you further find that the plaintiff went to the vicinity of the intersection of Wolf Lake street and said Goshen road expressly to see said horse race, and that the plaintiff paid no admission or fee for the privilege of seeing said horse race, and that the plaintiff saw that there were no ropes or barriers separating the place where he was from that portion of the said Goshen

road where said horse race was to be run; and if you further find that the plaintiff then knew that six horses were to run in said horse race, and that said race was to be started in said Goshen road somewhere between 600 and 800 feet northwest of where plaintiff then was, and that said horses were to run southeasterly on said Goshen road and past the point where plaintiff was, and if you find that plaintiff saw one or more of the horses in said horse race pass him, and the plaintiff went a short distance into said Goshen road when said horse race was being run, and was watching the horses in said race which had passed him, and paid no attention to the horses in said race which were still to come from the direction of the starting point; and if you further find that if the plaintiff had looked in the direction of said starting point, he would and could have seen other horses in said horse race which had not yet passed him and were coming toward him from the starting point of said race, and could have avoided any injury to him from said horses by the exercise of such care and caution as a reasonably prudent and cautious man would have exercised under like circumstances, and in the situation that plaintiff was then in, as shown by the evidence; and if you further find that by reason of plaintiff's failure to exercise such care and caution, one of the horses running in said race ran against and struck him, and injured him as shown by the evidence, then I instruct you that the plaintiff cannot recover in this suit, and your verdict ought to be for the defendants, and this is true even if said horse race was run upon a public highway.''

This case is in all essential respects similar to that of *Johnson* v. *City of New York* (1906), 186 N. Y. 139, 116 Am. St. 545, 9 Ann. Cas. 824. That action was brought to recover damages for personal injuries suffered by the plaintiff by being struck by an automobile while witnessing an automobile race in a public highway in a borough of New York City. The plaintiff had come from her residence about five miles to see the races, and at first watched the

race from the highway, then went into an adjacent clump of woods to get a better view, and while there was struck by an automobile which was by some mischance deflected from the road. The act of the city in authorizing the use of the road as a race course was illegal, and the act of the other defendants in holding the race under that permission was equally illegal, and the race held by the defendants was an unlawful use and obstruction of the highway and *per se* a nuisance.

The court said: "But granting that the action of the defendants in the use of the highway was illegal, the question remains, Was it illegal against the plaintiff so as to render the parties participating therein liable to her solely by reason of the illegality of their acts and regardless of any element of negligence or other misconduct. If the plaintiff had been a traveler on the highway when she met with injury a very different question would be presented. Highways are constructed for public travel, and, as already said, the acts of the defendants were doubtless an illegal interference with the rights of the traveler. It may well be that for an injury to the traveler, or to the occupants of the lands adjacent to the highway, or even to a person who visited the scene of the race for the purpose of getting evidence against the defendants and prosecuting them for their unlawful acts, the defendants would have been absolutely liable regardless of the skill or care exercised. But the plaintiff was in no such situation. She was not even a casual spectator whose attention was drawn to the race while she was traveling in the vicinity. She went from her home, a distance of five miles from the scene of the race, expressly to witness it and to enjoy the pleasure that the contest offered. As to the elements which made the contest illegal she was aware of their existence. She knew it was to take place on a highway, and she knew it was to be a contest for speed, and that, therefore, the automobiles would be driven at the greatest speed of which they

were capable. * * * It is entirely possible that as a' matter of fact the plaintiff did not know that the race on the highway was illegal, but it was illegal not from any want of permit, but because there was no statutory power to grant a permit to use the highway for a private purpose. The plaintiff, like every other person, is chargeable with knowledge of law, however ignorant in fact she may have been of it. * * * We are at a loss, moreover, to see how the legality or illegality of the race affected a person in the condition of the plaintiff. The danger she would encounter in witnessing the race would be exactly the same had there been a statute of the state which expressly authorized it. It does not lie in the mouth of the plaintiff to assert as a ground of liability the illegality of an act from which she sought to draw pleasure and enjoyment. It may be assumed that her mere presence at the race was not sufficient participation therein to render her liable to prosecution as one of the maintainors or abettors of the nuisance * * * though in the case of a prize fight, at common law, all spectators were equally guilty with the combatants of a breach of the peace. * * * The general maxim *injuria non fit volenti* applies, and one cannot be heard to complain of an act in which he has participated, if not so far as to render him liable as a party to the offense or tort, at least to the extent of witnessing, encouraging it and seeking pleasure and enjoyment therefrom. Illustrations of this principle may readily be found. It is a misdemeanor to conduct a horse race within a mile of court when the court is in session; also to give a theatrical or operatic exhibition on Sunday. It seems to me absurd that persons obtaining admission and attending the prohibited race or opera and meeting injury there shall successfully assert the illegality of the exhibition as a ground of recovery. It might with just as much force be contended that the presence of the person injured at the illegal exhibition or spectacle precluded him from recovery against the parties by whose negligence or tort

the injury had been occasioned. Such is the law in some jurisdictions, * * *. Had the defendants broken into and entered without permission upon private property and conducted the race thereon, doubtless they would have been absolutely liable for all injuries occasioned thereby to the owners or occupants of the land. But what bearing would the trespass have on the defendants' liability to spectators? * * * As between the plaintiff and these defendants the legality or illegality of the exhibition given and witnessed, so far as that illegality depends on the obstruction and appropriation of the highway, was not the material factor. It did not create a liability against the defendants if they were at fault in the conduct of the race in no other respect. It does not preclude a recovery by the plaintiff if the injury to her was caused by the misconduct or fault of the defendants.'' This case was also followed in the case of *Bogart* v. *City of New York* (1911), 200 N. Y. 379, 93 N. E. 937, 21 Ann. Cas. 466. The case of *Scanlon* v. *Wedger* (1892), 156 Mass. 462, 31 N. E. 642, 16 L. R. A. 395, is similar.

Appellant has cited several cases from this and other states relating to the liability for injuries caused by an unlawful act, but in none of them was the plaintiff in the position of consenting to the unlawful act, as in the case here. There is no Indiana case which we have found in conflict with the New York opinion above quoted, and the reasoning in that case is so cogent that, without further discussion, the judgment is affirmed.

NOTE.—Reported in 113 N. E. 730. Liability of a municipality for consequences of a sanctioned unlawful use of its streets, 116 Am. St. 552. See also 37 Cyc 289.