## *Horace Sykes *v.* Town of Pawlet.

### *Highways.    Insufficiency.*

A person must be in the use of a highway *for the purpose of travel* in order to be entitled to recover damages on account of its insufficiency.

A party having voluntarily and for his own convenience deviated from a highway which in its traveled track was in good condition, and having met with an accident causing damages to him by backing his horse over a bank outside of the highway, but which extended up to the traveled track so as to make the highway itself dangerous and insufficient outside of the traveled track, is not entitled to recover against the town for the injury.

The plaintiff left the highway, which in its traveled track was in good condition, to drive into a private shed outside of the highway, for the purpose of leaving his team there while attending to some business in the village. In getting out of the shed he backed over a bank extending from the shed to the traveled track of the highway, and having no muniments on the margin. The place of the accident was outside of the highway. *Held,* that the plaintiff could not recover against the town for the injury.

ACTION on the case to recover damages for the loss of a horse and injury to a wagon and harness, occasioned by an alleged insufficiency of a highway. The case was referred, and the referee reported in substance as follows:

The accident happened in the village of Pawlet, September 11, 1867. The plaintiff's brother was backing the plaintiff's mare out of a shed, and in so doing, she fell down a precipitous bank into the stream which runs through the village, and was killed, and the wagon and harness injured, as hereafter stated. This shed belonged to the premises known as the Franklin Hotel, and was used in connection with the business of the hotel. A stone bridge spans the said stream in the highway about twenty-seven feet from the end of the shed. The end of the shed stands on the

---

* Tried February term, 1870.

brink of the stream; and the stream at its ordinary height is about twenty feet below the sill of the shed. Between one end of the shed and the end of said bridge is a precipitous bank at said height above the stream, and this had caved down so that it extended in front of the opening of the shed, and there was no muniment to guard a team from going off the bank down into the stream.

Early in the evening in which the accident occurred, the plaintiff's brother drove the team into the shed, and hitched the mare in question. He had no business at the hotel, but had business to transact in the village, and had been in the practice of leaving his team in that shed when he had business or other cause for so leaving his team—though he had no business at and did not enter the hotel. He was aware of the condition of the ground in front of the shed.

At about eight o'clock, there being a clear sky and the moon shining, he returned to the shed and entering it, unhitched his mare, and taking the reins at the bits, after moving the hind part of the wagon to the eastward, he backed her out until her hind feet stepped out of the shed; in so stepping out, she stepped on a round pole which lay against the sill of the shed (being put there evidently to make the ascent to the floor of the shed more easy,) and became nervous, upon which the plaintiff's brother took hold of the reins with his left hand close to the bits, for the purpose of slapping her with his right to urge her forward into the shed; but instead of going forward, she backed entirely out of the shed, and continued stepping, and being beyond his control, she stepped off the brink of the precipice and fell into the bed of the stream.

I do not find that in the driving into the shed and fastening of the mare therein, or in backing out, there was any want of ordinary care and prudence on the part of the person having charge of her. And I do find that the mare was ordinarily gentle and orderly. I also find that the highway, near the southeast corner of the bridge, which was the corner nearest the shed, was insufficient; though such insufficiency was outside of the traveled path of the highway. I also find that the place where the accident happened was outside the limits of the highway, but it would have been dangerous to travellers upon the highway if the space between the shed and the corner of the bridge had no railing or fence, even if the wall from the river's brink to the surface of the ground were built up and perfect, and the cavity filled level with the surface of the ground contiguous. I find also that since said shed was built, there has never been any fence between it and the highway, and that the shed has been entered and used by people

generally who have occasion to hitch and leave their horses in the village, though they may have no business at the hotel; but this has never been done to the exclusion of teams or horses belonging to persons stopping or having business at the hotel.

Due notice was given by the plaintiff to the selectmen of the town that he would claim satisfaction of the town for the injury.

The damages suffered by the plaintiff were found to be $294.26.

The referee found what had been done by the town formerly towards guarding said bank; and that the selectmen had made propositions to fill up or bridge over the cavity in front of the shed, and protect the bank.

The court, at the June term, 1869, PROUT, J., presiding, having rendered judgment for the plaintiff, *pro forma*, on the report of the referee, the defendant excepted.

*Fayette Potter* and *Daniel Roberts*, for the defendant.

*J. B. Bromley* and *A. L. Miner*, for the plaintiff.

The opinion of the court was delivered by

BARRETT, J.    The case being before us upon exceptions to a *pro forma* judgment of the county court, on a report of a referee, it is for this court to determine what judgment ought to be rendered. The court can regard only the facts found by the referee, as constituting the ground for such judgment.

In order to charge the town with liability for the damage sustained by the plaintiff, it is necessary that it should appear that such damage was caused by the insufficiency and want of repair of the highway, as provided by our statute, as it has been construed and applied in a long series of decided cases.    This case seems to present several formidable reasons why the plaintiff is not entitled to recover.

The traveled track of the highway is not complained of.    The plaintiff did not meet with the accident in attempting to use it as a thoroughfare for travel.    On the other hand he went on the road as far as he desired to, and then turned aside and drove under a private shed as matter of choice and convenience, to let his team stand while he was going about the village on foot, in the transac-

tion of business. When he got ready to use his team again, he undertook to get it out of the shed with a view to getting it on the road again, but in doing this his horse backed out of the shed directly into the gulf, some twenty feet and more from the traveled track. This would seem to render the case of *Rice* v. *Montpelier* very much in point against his right to recover.

Again, the duty of the town in reference to the margins of highways has never been extended beyond the requirement that they should be kept in a reasonably safe condition as against such accidents as are likely to, and actually do, occur in using the highway for the purpose of travel. In this case the backing into the gulf was not the result of an accident that occurred in using the highway for travel, but it resulted from using a shed by the side of the highway, in an interval of cessation from travel, and attempting to get back into the road, after a voluntary departure from it.

Again, in order to entitle the plaintiff to recover, it should appear that the defect complained of was within the limits of the highway as located and established. This does not appear, but on the contrary, so far as the facts in this regard are shown to the court, the place of the accident was outside of the limits of the established highway. It is not to the purpose to say, that that gulf extended from the shed so near to the traveled track, and even within the limits of the highway, as to be very dangerous to persons passing on the traveled track of the highway. If the plaintiff had met with the accident for that cause, and in that manner, he would have had a case very different from his present one in this respect, but which we do not now undertake to decide, nor do we undertake to intimate what consideration we should give to it. The dangerousness of the gulf near the traveled track did not trouble him in this instance. It was the gulf near the front of the shed, and many feet away from the traveled track.

While we should recommend to the parties entitled. to control the matter to fill up that *horrible gulf*, and especially to the keeper of the Franklin Hotel to make a safer entrance and exit in front of his shed for the accommodation of his neighbors who may want

a good hitching-place under cover, when they come to the village on business ; still, we are clear that the town cannot be made responsible for default in this respect, in this case.

Judgment is reversed, and judgment for the defendant.