No. 19,548.

A. J. MALCHOW, *Appellant,* v. THE CITY OF LEOTI, *Appellee.*

SYLLABUS BY THE COURT.

1. CITIES—*Nuisance—Merry-go-Round on Public Street—Personal Injuries—Liability of City—Contributory Negligence.* The defendant city had no right to permit its streets to be occupied by a merry-go-round, guy ropes, cable, engine, tank, fuel, and a baby rack, and such obstructions constituted a public nuisance rendering the city liable to a person injured thereby unless so careless as to be held responsible himself for such injury.

2. SAME. Such use of the streets with the knowledge and assent of the city for the partial benefit of the commercial club amounted to an invitation to the public to patronize the attraction, and one who in passing along the street thus occupied stopped for from one to five minutes near the engine, and was injured by the explosion of its lubricating glass, is entitled to recover unless it appear from all the facts and circumstances that he failed to exercise such care as ordinarily cautious and prudent persons would have used under like circumstances.

Appeal from Wichita district court; ALBERT S. FOULKS, judge. Opinion filed June 12, 1915. Reversed.

*H. O. Trinkle,* of Garden City, for the appellant.

*C. R. Douglass,* of St. John, for the appellee.

The opinion of the court was delivered by

WEST, J.: The city permitted a merry-go-round to be located for several days upon the intersection of two of the principal streets. It was run by an engine which

was placed east and a little south of the swing, the two being connected by a cable. A short distance from the engine was a water tank and south of that some coal, and also a baby rack and a number of guy ropes. There was testimony that the sidewalk running north and south on the east side of the street just south of the intersection was not fit for use but was covered with dirt, trash and thistles. At or near the southeast corner of the square was a cellarway which extended up to or near the line of the sidewalk, near which cellarway certain rubbish had accumulated. The engine was about ten feet from the south walk and some fifteen or twenty feet from the line of the east walk projected north across the intersection. In the evening, about eight o'clock, the plaintiff, who lived south of the southeast corner of the intersection on which the swing was located, started to go north to a store located at the northeast corner of the intersection. There were no lights around the swing except one lantern held by the engineer. The swing was in operation. The plaintiff came along by the swing, where there were a few bystanders, and the engineer held out his lantern as if desiring some one to hold it while he fixed something about the engine. The plaintiff took it, and while holding the lantern the lubricating glass of the engine burst and a piece of it struck the plaintiff in the eye and destroyed the sight thereof. He sued the city for damages, alleging negligence in permitting the swing and engine to be located so as to completely obstruct the travel upon the streets in question by vehicles and to obstruct travel for pedestrians without danger of being injured. The jury returned a verdict for the defendant, and in answer to special questions found that the plaintiff when injured had been holding the lantern from one to not to exceed five minutes; that he was within from one to three feet of the engine; that he could have gone from the house to the store without danger from the engine;

that he was not exercising ordinary care; that he knew the engine was in the street; that there was room to pass without danger of injury; that he knew, or by the exercise of ordinary care should have known, that the engine was in a defective condition; that he was assisting the engineer in its repair at the time of the injury, and that he was guilty of contributory negligence. In answer to question No. 10, "If he could not have avoided the injury by the exercise of ordinary care why not?" they answered, "Because he did not use ordinary care." They were instructed that if they should find the defendant negligent in allowing the obstruction in the street, before the plaintiff could recover "it must be established by the evidence that the negligence of the defendant was the direct and proximate cause of the injury and that the plaintiff was free from contributory negligence." Also, that if the plaintiff was within a few feet of the engine holding the lantern for the engineer to see and "knew that the engine was defective, or that by the exercise of ordinary care he should have known that the accident might happen, then the act of holding the lantern would constitute negligence on his part and you would be justified in so finding." Also, that if the plaintiff knew of the obstruction and by the exercise of ordinary care could have avoided it the jury would be warranted in finding him guilty of contributory negligence.

While the charge was given that it was the duty of the city to keep its streets open for public travel, and if it knowingly permitted them to remain obstructed, this fact alone would constitute negligence on its part, still it seems quite plain that the case was tried largely on the theory that the plaintiff was merely a passer-by or pedestrian governed by the ordinary rules of one who stumbles over an obstacle in the street.

It is perfectly plain that he knew before starting to the store that the street was thus occupied, and he knew, as every one else familiar with the situation

knew, that he could avoid the obstruction by going some other way or by refraining from going at all, but it was not his duty to establish his lack of contributory negligence, nor was it essential that it be established by the evidence that he was free from contributory negligence. Indeed the court charged in the fourth instruction that this burden was upon the defendant, and the correct rule was therein given to the jury, contrary to the erroneous one already referred to.

Another instruction complained of was that if the plaintiff knew that the engine was defective or by the exercise of ordinary care should have known that the accident might happen then the act of holding the lantern would constitute negligence on his part.

The undisputed testimony is that the swing was in operation, which necessarily implies that the engine must have been running, and the plaintiff testified without dispute that he knew nothing about an engine, and there is nothing shown in the evidence that any one had any reason to foresee that the particular accident might happen which did happen and which might as naturally have injured another of the bystanders or the engineer himself as the plaintiff had he or such others been in the line of the glass sent flying by the explosion. Attractions of the character in question are purposely designed to entertain and collect crowds of persons, and the fact that the street was taken up with the swing, engine, cable, tank, fuel, guy ropes and baby rack did not bar the plaintiff from the right to pass over such street, and the trial court properly charged that such obstruction was a nuisance and leaving it in the public street was negligence of an aggravated character. (*Farrell v. City of Dubuque*, 129 Iowa, 447, 105 N. W. 696; *Wheeler v. City of Ft. Dodge*, 131 Iowa, 566, 108 N. W. 1057, 9 L. R. A., n. s., 146; *Moore v. City of Bloomington*, 51 Ind. App. 145, 95 N. E. 374; Note, 20 L. R. A., n. s., 513-769; *Little, Adm'r, v. The City of Madison*, 42 Wis. 643, 24 Am. Rep. 435; *Van Cleef v.*

*City of Chicago,* 144 Ill. App. 488, affirmed in 240 Ill.
318, 88 N. E. 815; *Johnson v. City of New York,* 186
N. Y. 139, 78 N. E. 715; Wood on Nuisances, 3d ed.,
§ 248 *et seq.*)

"The power to authorize obstructions may be dele-
gated to municipal corporations, but, in the absence of
a provision in its charter or some general law upon the
subject, a municipality has no more right to license or
maintain a nuisance than an individual would have,
and for a nuisance maintained upon its own property
a city is liable the same as an individual would be.
Even where a city is given exclusive power over its
streets, such power must be exercised for the good of
the general public, and the city can not authorize ob-
structions in its streets for merely private purposes."
(2 Elliott, Roads and Streets, 3d ed., § 836.)

It was the duty of the city to keep its streets in a
safe condition for use in the usual mode by travelers.
(*City of Eudora v. Miller,* 30 Kan. 494, 2 Pac. 685;
*Gould v. City of Topeka,* 32 Kan. 485, 4 Pac. 822;
*Osage City v. Larkin,* 40 Kan. 206, 19 Pac. 658; *Tepfer
v. City of Wichita,* 90 Kan. 718, 136 Pac. 317; *Spencer
v. Kansas City,* 92 Kan. 161, 139 Pac. 1029.)

A member of the committee appointed by the com-
mercial club testified that it was stated to the mayor
that "the reason they wanted to set the swing up there
was they wanted it to be as handy to the people and
public as they could get it so as to get as many to ride
as they could for the benefit of the commercial club;
that the club was to receive a part of the earnings of
the swing." So here was a nuisance permitted in the
street as a matter of profit, in part, to a local enterprise,
and by thus consenting to its location the city was by
act, if not by word, extending an invitation to every-
body to patronize the attraction. Having thus diverted
the street from its lawful use to the unlawful one of
exploiting an enterprise more or less dangerous, the
motive power being furnished by a steam engine con-
nected by cable with the swing, the city is not in a posi-

tion to draw too fine a line on the conduct of the plaintiff because he stopped for a brief time where he with others had been thus attracted. He had the right to pass over such parts of the street as he could reach by avoiding the obstructions, and was not required to forego the use of the intersection or so much of it as he could walk over. (*Telephone Co. v. Vandervort*, 71 Kan. 101, 79 Pac. 1068.) It has been held that streets are for use for business, pleasure or curiosity. (*City of Waverly v. Reesor*, 93 Ill. App. 649; *Village of Bath v. Blake*, 97 Ill. App. 35.)

The nuisance having been placed in the street with its knowledge and consent the city became liable to one injured thereby unless the person so injured was sufficiently guilty of carelessness to be himself held responsible for the injury. The question of contributory negligence in this case does not depend upon the mere fact that the plaintiff could have gone to the store by using some other route, or that he stopped voluntarily as he came near the engine, or that he knew the obstruction was in the street and could have avoided it, or that he held the lantern for the engineer, but it depends upon the question whether under the circumstances shown the plaintiff used such caution or prudence as an ordinarily careful person would have used under like circumstances and conditions.

Upon the principles thus indicated the plaintiff had a right to have his case tried, and having been denied such right he is entitled to a reversal of the judgment against him and to a new trial.

In view of the many instances of similar attractions being permitted upon the streets of cities it is not at all strange that the defendant in this case gave its assent to the location of the merry-go-round at the intersection of its two principal streets, but the frequency of such instances in no wise tends to their legality. As instances of expressions used by other courts touching such matters the following may be

noticed. In *Farrell v. City of Dubuque,* 129 Iowa, 447, 105 N. W. 696, a case of an injury occurring by being struck by a piece of timber constituting a portion of the frame constructed in a street for the purpose of a street fair, it was said:

"It is clear that when the city allowed these structures to remain in the street with the knowledge that they had been unlawfully placed there, and that they were dangerous, it rendered itself liable to any one receiving injuries by reason thereof. (*Duffy v. City of Dubuque,* 63 Iowa, 171, 176, 18 N. W. 900; *Bliven v. City of Sioux City,* 85 Iowa, 346, 52 N. W. 246; *Carson v. City of Ottumwa,* 102 Iowa, 99, 71 N. W. 192; *Wells v. City of Brooklyn,* 41 N. Y. Supp. 143; *Griffin v. Boston,* 182 Mass. 409, 65 N. E. 811; *Richmond v. Smith,* 101 Va. 161, 43 S. E. 345.)" (p. 452.)

In *Richmond v. Smith,* supra, a case of an injury from an obstruction erected in a street by a carnival association, it was said, speaking of the city:

"It has no other or different control of the streets than is prescribed in the charter or the general statutes of the State. Having no legislative authority to grant the use of the streets for such purpose, the ordinance was a nullity, and in no way affects the plaintiff's right to recover in this case. . . . It is also an established general rule that any unauthorized obstruction which unnecessarily impedes or incommodes the lawful use of a highway is a public nuisance at common law. . . . Cities have no power, without legislative authority, to authorize obstructions, in the streets, that are condemned as nuisances. If, under the inspiration of modern ideas, it is deemed necessary to the public weal that the streets of cities should be blocked by such obstructions and exhibitions as we are considering, the way is open to accomplish it. Let the Legislature be applied to for the requisite authority. The Courts cannot grant it, nor can they approve the assumption of such a power, where no lawful authority for its exercise is shown to exist." (pp. 165, 166, 170.)

In *Wheeler v. City of Ft. Dodge,* 131 Iowa, 566, 108 N. W. 1057, 9 L. R. A., n. s., 146, at the close of the opinion the court, quoting from a New York decision

(*Cohen et al. v. Mayor, etc., of New York,* 113 N. Y. 532, 539, 21 N. E. 700), said:

" 'When it is understood that such license had not only no effect in the way of legalizing an obstruction, but that it simply makes the city a partner in the maintenance of a public nuisance, . . . such knowledge may . . . tend in some degree to the protection of the public in the lawful use of its own highways.' " (p. 583.)

The judgment is reversed and the cause remanded for further proceedings in accordance herewith.