Argued at Pendleton May 6; affirmed May 14, 1940

THOMAS *v.* CITY OF LA GRANDE

(102 P. (2d) 213)

Department 2.

*George T. Cochran,* of La Grande (Cochran & Eberhard, of La Grande, on the brief), for appellant.

*E. R. Ringo,* of La Grande, for respondent.

KELLY, J. This is an action by Mabel F. Thomas against the city of La Grande to recover damages for personal injuries sustained by her when thrown from a swing operated by a carnival company under the auspices of the American Legion upon one of the streets of defendant, city. A demurrer to plaintiff's second amended complaint having been sustained, plaintiff declined to plead further and a judgment of dismissal was rendered. From this judgment plaintiff appeals.

In her second amended complaint, plaintiff alleged the municipal character of defendant, the provisions of its charter authorizing defendant to license, tax and regulate places of public amusement and entertainment, to purchase sites for public purposes and to provide for the government and management of the same, to purchase, take, hold and sell real property when sold for delinquent taxes or assessments levied or imposed under the authority of the city of La Grande, to prevent and remove nuisances, to regulate the use of streets, roads, highways, and public places, to grade, pave and otherwise improve streets, to acquire title in the manner provided by law to land for public purposes, and to lay out, improve and have exclusive control of the same.

It is also alleged in the plaintiff's second amended complaint that, since about 1930, defendant city has been and now is the owner in possession and having exclusive control of Block 10, Riverside Addition to defendant city of La Grande.

It is therein further alleged that North Fourth Street, Jackson Avenue and the W Street [Avenue] are streets within said city and form a junction on the east side of said block 10; that said North Fourth Street extends along the east side of said block 10; that said W Avenue extends along the south side thereof, jogs north

on the east side of said block on Fourth Street for a short distance and then extends easterly from the east side of said North Fourth Street and that said Jackson Avenue extends in a southeasterly direction from said junction of said streets. The dedication and improvement by the defendant of said streets and the public use thereof as streets and highways for travel are also alleged.

To assure accuracy, we quote paragraphs V, VI, VII, VIII, IX and a portion of paragraph X of plaintiff's second amended complaint:

"V.

That prior to the 30th day of July, 1938, the American Legion, a corporation, applied to the defendant city for permission to hold a carnival, called the Patrick Shows, within the city limits of the city of LaGrande, Oregon, and said defendant city agreed with said American Legion that said carnival could be held by it without the payment of any license fee.

VI.

That acting under said agreement, said American Legion, from about the 23rd day of July, 1938, to and including the 30th day of July, 1938, went upon said Block 10 and a part of said North Fourth Street, at or near the junction of said North Fourth Street with W Avenue and Jackson Avenue, in LaGrande, Oregon, and did sponsor and hold thereon said carnival called the Patrick Shows. That said carnival consisted of numerous structures, booths, attractions, and also included games, events, ferris wheel, swing, merry-go-rounds, and especially a swing called the Merry Mix-Up, and many other attractions, and said structures were festooned and illuminated with lights, all designed to draw to said place large numbers of people, and all of which was well known to the defendant. That during said time crowds of people attended said carnival, admission fees were charged for each of said

several shows and attractions, including said Merry Mix-Up, and said American Legion furnished ticket-takers at the various attractions and said defendant city furnished policemen to supervise the conduct of said carnival.

## VII.

That one of the attractions erected in said carnival was a swing called a 'Merry Mix-Up' and was located in and upon North Fourth Street at about the junction of said North Fourth Street, Jackson Avenue and W Avenue in said city; that said swing was worn and out of repair and was an apparatus likely to produce injury unless operated with due care and consisted of a number of individual seats or swings suspended by rods and chains from cross-arms or framework supported by a central pole which was caused to revolve by a gasoline motor controlled by an operator sitting in the center; that when at rest the seats were suspended about two feet above the ground, and said seats had no foot rests or foot supports, and in riding on said swing the occupants, including this plaintiff, were compelled to let their feet hang free. That there was a short chain known as a 'safety chain,' one end of which was fastened to one of the suspending chains at the front side of the seat, and when seat was occupied, this 'safety chain' was intended to be placed across in front of the occupant and fastened by snaps to the suspending chain on the other side to keep the occupant from falling out. That when said swing was revolved, the seats swung out from the central pole, and the distance from the seats to the ground correspondingly increased. That in the course of the operation, the operator of said swing caused said apparatus to be revolved at a high rate of speed and the seats to be swung out at an angle of more than 45 degrees and the seats to be about 15 feet from the ground. That said swing was enclosed partially by a fence and partially by trucks parked at places near said swing and in such positions that any one falling from a seat of said swing while in motion would likely strike one of said trucks. That a ticket wagon was

situated nearby and tickets were sold to patrons for rides in said swing. That a man was stationed near said ticket booth who continuously proclaimed in a loud voice the thrills and pleasures of riding in said swing. That attendants took tickets at the time patrons were seated in said swing, and other attendants seated passengers in the seats of said swing, and that it was the duty of said attendants to attach said 'safety chains' in front of the passengers in each seat so as to prevent said passengers from being thrown out of said seats. That a large crowd of people congregated in and about said carnival and in and about said swing, and large numbers of people, including the plaintiff, were induced to ride upon said swing.

## VIII.

That said defendant at all times herein mentioned had notice and knowledge, or by reasonable diligence ought to have known of said carnival upon said Block 10 and said streets as aforesaid, and of the location and condition of the swing hereinabove described, and by its actions said defendant invited the public, including plaintiff, to attend and patronize said carnival and ride upon said swing, and it was the duty of said defendant to keep said Block 10 and said streets safe for this plaintiff and to see that said swing was safe, and operated safely so as not to injure this plaintiff.

## IX.

That at the time plaintiff rode upon said swing as hereinafter alleged, defendant was negligent in the following particulars:

(1) Defendant unlawfully and negligently permitted said carnival and said swing to be erected on said Block 10 and in said streets while said swing was dangerous and out of repair, and negligently failed to make said Block 10 and said streets safe for plaintiff.

(2) Defendant negligently permitted said swing to be erected and operated at said place in a dangerous, unsafe and defective condition, and while the seats thereof were slick and smooth and tipped in a manner

that would cause or permit plaintiff to slide out while riding, as hereinafter alleged.

(3) Defendant negligently permitted said swing to be erected and operated at said place without any foot rests or foot supports attached to the seats of said swing.

(4) Defendant negligently permitted said swing to be erected and operated at said place without sufficient safety chains to hold plaintiff in the seat while riding as hereinafter alleged.

(5) Defendant negligently failed to inspect said swing and failed to make said swing safe for the public and especially for this plaintiff.

(6) Defendant negligently failed to prohibit the operation of said swing at a dangerous and excessive rate of speed, and negligently permitted said swing to be operated at a dangerous and excessive rate of speed and at a speed that caused the seat of said swing in which plaintiff was riding as hereinafter alleged to swing out at an angle of more than 45 degrees and to be a great distance, to-wit, about 15 feet, above the ground.

(7) Defendant negligently failed to see that a safety chain was fastened in front of plaintiff to hold her in the seat of said swing while riding as hereinafter alleged.

(8) Defendant negligently failed to see that the trucks parked around said swing were placed at a sufficient distance away from said swing to be safe, and negligently permitted a truck to be parked sufficiently near to said swing that an occupant falling out of said swing would likely strike the same, and plaintiff did strike the same, as hereinafter alleged.

(9) Defendant negligently permitted a dangerous apparatus which was likely to cause the injury to this plaintiff, to-wit, said swing, to be erected and operated on said Block 10 and said streets at a place where the public and this plaintiff were entitled to go.

## X.

That on the 30th day of July, 1938, plaintiff attended said carnival and went upon said Block 10, and said streets, secured a ticket for a ride upon said swing, and pursuant to said ticket, entered upon said swing and took a ride thereon. That during such ride, said swing was operated carelessly and negligently as aforesaid, while so worn and out of repair, and at said high rate of speed and by reason of each and all of the defects in said swing hereinabove alleged, and by reason of each and all of the acts of negligence of defendant as herein alleged, plaintiff was hurled out of said swing and against the body of a truck so parked as aforesaid.''

From the foregoing, it will be seen that the question presented is, whether liability for such damages as plaintiff sustained attached to defendant city when it permitted the carnival company to conduct and operate its carnival on said block and street either by reason of its ownership and control of property abutting upon the street in question, or by reason of its duty to maintain said street in such a condition as to render it safe for travel.

The use of block 10 by the carnival company is relevant only upon the question whether the defendant city, by allowing such use, permitted a nuisance upon its street from which plaintiff sustained damages differing from those suffered by the general public for which the city became liable.

The controlling question, therefore, is whether the defendant city is liable to one, who suffers injury while not using the street for street purposes, by reason of its failure to maintain the street in question in such a condition as to render it safe for travel.

The authorities are not harmonious upon the question here involved and heretofore the question has not been decided by this court.

■ The general rule is that one injured by a defect in a highway, while he is lawfully there and using it as a traveler or pedestrian thereupon, may recover damages from the municipality whose duty it was to prevent the existence of such a defect. The dissidence arises as to whether or not such liability is confined to travelers.

■ We think that the weight of authority and the better reasoning support the rule restricting liability to travelers only. This, of course, embraces those whose presence on the street is for such purpose even though at the time of their injury they may not have been actually moving or traveling. *Bogart v. New York*, 200 N. Y. 379, 98 N. E. 937, 21 Ann. Cas. 466; *Johnson v. New York*, 186 N. Y. 139, 146, 148, 78 N. E. 715, 9 Ann. Cas. 824, 116 Am. St. Rep. 545; *City of Florence v. Woodruff*, 178 Ala. 137, 59 S. 435; *Blanchard v. City of Portland*, 120 Me. 142, 113 A. 18; *Philbrick v. Pittston*, 63 Me. 477; *Leslie v. Lewiston*, 62 Me. 468; *Blodgett v. City of Boston*, 8 Allen 237; *Stickney v. City of Salem*, 3 Allen 374; *Ball v. The Town of Winchester*, 32 N. H. 435; *Sykes v. Town of Pawlett*, 43 Vt. 446, 5 Am. Rep. 295; *Hawes v. Town of Fox Lake*, 33 Wis. 438; *Hill v. Reaves*, 224 Ala. 205, 139 S. 263.

The case of *Lawrence v. Scranton City*, cited by plaintiff to the point that municipalities are liable for the existence of nuisances, is a case where plaintiff's son and his companions had been coasting on the street on Christmas eve. When the son struck a match to light a cigarette an explosion of gas from a leaky main occurred fatally injuring the boy. Clearly the boy was upon the street as a traveler or pedestrian using it for the purposes for which it was dedicated. *Lawrence v. Scranton City*, 284 Pa. 215, 130 At. 428, 41 A. L. R. 454.

*Wheeler v. City of St. Helens,* also cited to the same point by plaintiff, deals with an accident occurring on property held by the municipality for financial advantage which it conferred and thereby served the corporate and not the governmental province of the city. *Wheeler v. City of St. Helens,* 153 Or. 610, 58 P. (2d) 501. In the instant case, there is no suggestion that the plaintiff's accident happened elsewhere than in the street named.

*Augusta v. Reynolds,* similarly cited, holds that the solicitor general may maintain a suit to restrain by injunction the erection of a public nuisance consisting of a street fair or carnival. *Augusta v. Reynolds,* 122 Ga. 754, 50 S. E. 998, 69 L. R. A. 564, 106 Am. St. Rep. 147.

To the point that one having control of property is responsible for exhibitions of concessionaires, plaintiff cities *Johnstone v. Panama–Pacific International Exposition Co.,* 187 Cal. 323, 202 P. 34. In that case, plaintiff had purchased a ticket entitling her to admission to the exposition grounds. The exposition company permitted other visitors to operate electric carriages upon its thoroughfare used by visitors traveling on foot. These electric carriages were rented from a concessionaire. Injury to plaintiff was inflicted by the negligence of an operator of one of such carriages while plaintiff was a pedestrian upon such a thoroughfare. The defendant exposition company was engaged in an entertainment and amusement enterprise for which it received remuneration from plaintiff. The plaintiff was one of its patrons. The distinction between that case and the instant case is obvious.

*Thornton v. Maine State Agricultural Society,* 97 Me. 108, 53 A. 979, 94 Am. St. Rep. 488, similarly cited,

is one involving the question whether defendant society in holding one of its annual fairs was liable for the negligence of a concessionaire, who conducted a shooting gallery, which negligence resulted in the fatal shooting of plaintiff's intestate. Plaintiff's intestate had attended the fair on the two previous days and had returned on the fatal day with the intention of going there on the day of the tragedy. It was while he was in proximity to the fairgrounds that he was killed. In the case at bar, defendant city was not conducting an entertainment, received no compensation or remuneration and plaintiff was in no sense its patron.

The case of *Stickel v. Riverview Sharpshooters' Park Company*, 250 Ill. 452, 95 N. E. 445, 34 L. R. A. (N. S.) 659, similarly cited, announces the rule that the owner of an amusement park, who receives a percentage of the receipts of concessionaires as compensation for the concessions assumes an obligation that the devices and attractions operated by them are reasonably safe for the purposes for which the public is invited to use them. In the instant case, as stated, defendant was not the owner of an amusement park and did not receive any compensation from the legion or the carnival company.

In *Eldred v. United Amusement Co.*, 137 Or. 452, 2 P. (2d) 1114, it appears that the defendants were jointly engaged in operating various amusement devices for profit.

To the point that the invitation of a concessionaire operating a show in the street is the invitation of the city, plaintiff cites *Ramirez v. Cheyenne*, 34 Wyo. 67, 241 P. 710, 42 A. L. R. 245. That case does not involve an invitation by a concessionaire. The defendant city maintained the swing in suit. The doctrine of the case

is that if a city invites children to playgrounds, where it maintains devices for their use in play, such city must assume at least such duties and liabilities as those which would be assumed by a charity doing the same thing.

■ The foregoing review of many of the cases cited by plaintiff is not determinative of the controlling question here, which is whether liability for damage by reason of a nuisance upon a public highway is restricted to those cases where the one injured is using the highway for the purpose for which such highway was established and dedicated.

There are two cases cited by plaintiff which may be said to sustain her contention, although both of them, in our opinion, could have been decided as they were without enlarging the liability of the municipality to embrace all cases of injury whether sustained by a traveler or not.

*Malchow v. Leoti*, 95 Kan. 787, 149 P. 687, L. R. A. 1915F, 568, being one of the two cases just mentioned, is a case wherein the defendant city permitted a merry-go-round to be located upon the intersection of two of its principal streets. The merry-go-round was run by an engine which was placed east and a little south of the swing, the two being connected by a cable, and a short distance from the engine was a water tank, and a short distance from that some coal and also a baby rack and a number of guy ropes. The sidewalk running north and south on the east side of the street just south of the intersection was not fit for use, but was covered with dirt, trash and thistles. At or near the southeast corner of the square was a cellarway which extended up to or near the line of the sidewalk near which cellarway certain rubbish had accumulated. The engine was

about ten feet from the south walk, and some fifteen or twenty feet from the line of the east walk projected north across the intersection. In the evening about eight o'clock the plaintiff, who lived south of the southeast corner of the intersection on which the swing was located, started to go north to a store located at the northeast corner of the intersection. There were no lights around the swing except one lantern held by the engineer. The swing was in operation. The plaintiff came along by the swing where there were a few bystanders, and the engineer held out his lantern as if desiring someone to hold it while he fixed something about the engine. The plaintiff took it, and while holding the lantern the lubricating glass of the engine burst and a piece of it struck the plaintiff in the eye destroying the sight thereof.

It will be noted that plaintiff was not a patron of the swing but a pedestrian traveling upon the partially obstructed street. We quote from the opinion:

"So there was a nuisance permitted in the street as a matter of profit in part to a local enterprise, and by thus consenting to its location the city was by act, if not by word, extending an invitation to everybody to patronize the attraction. Having thus diverted the street from its lawful use to the unlawful one of exploiting an enterprise more or less dangerous, the motive power being furnished by a steam engine connected by a cable with the swing, the city is not in a position to draw too fine a line on the conduct of the plaintiff, because he stopped for a brief time where he with others had been thus attracted. He had the right to pass over such parts of the street as he could reach by avoiding the obstructions, and was not required to forego the use of the intersection or so much of it as he could walk over."

From this it is apparent that the question of the liability of the city to an injured patron as distinguished from a traveler or pedestrian using the street for street purposes was not before the Kansas court in this case. It is shown in *VanCleef v. Chicago*, 240 Ill. 318, 88 N. E. 815, 23 L. R. A. (N. S.) 636, 130 Am. St. Rep. 275, that plaintiff had patronized an attraction called "Enoch the Water Man", and as she was leaving the place in descending the steps from a platform to the street she was pushed by the crowd, and, there being no railing or guard along the edge of the stairway, she fell to the street and suffered serious injuries. The platform was in front of the tent in which the show was conducted. It was six feet wide, fifteen or more feet long and four or five feet above the street. There was a stairway five or six feet wide from the platform down to the street and another stairway from the platform down into the tent. The entire structure was in the street; and as plaintiff had emerged from the tent, gone across the platform, and, when the accident occurred, was descending the stairway to the grade of the street, it could well be considered that she was a traveler on the highway when she was injured.

We construe the opinion, however, in the VanCleef case as supporting plaintiff's position in the case at bar; but, as stated, in the light of the other authorities, we do not deem it to be controlling.

*Wheeler v. Fort Dodge*, 131 Iowa 566, 108 N. W. 1057, 9 L. R. A. (N. S.) 146, also cited by plaintiff, is one wherein plaintiff was injured upon the street of defendant city when an unfortunate female acrobat fell a distance of about seventy feet as she attempted to slide from the courthouse roof to the ground while apparently hanging by her teeth to a strap suspended

from a wire stretched for that purpose. This is a case which deals with the question of liability of the municipality to a traveler upon the streets.

*Briegel v. Philadelphia*, 135 Pa. St. 451, 19 A. 1038, 20 Am. St. Rep. 885, deals with the question of a city's liability for damages to adjoining property by reason of a defectively constructed privy well.

We have thus reviewed all of the authorities cited by plaintiff and, notwithstanding the high regard we have for the courts thus cited, we are unable to agree with plaintiff that error was committed by the trial court in sustaining the demurrer to plaintiff's second amended complaint.

"*Volenti non fit injuria*", no legal wrong is done to him who consents. Certainly the consent of plaintiff was plainly shown by patronizing the concession and riding as a patron on the swing.

The judgment of the circuit court is affirmed.

RAND, C. J., and BELT and LUSK, JJ., concur.